No. 25-13409

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

SUSAN DRAZEN, ON BEHALF OF HERSELF AND
OTHER PERSONS SIMILARLY SITUATED,

*Plaintiff-Appellant,*

v.

GODADDY.COM, LLC,

*Defendant-Appellee,*

JUAN ENRIQUE PINTO

*Interested Party-Appellee.*

On Appeal from the United States District Court
for the Southern District of Alabama,
No. 1:19-cv-00563-KD-B, Hon. Kristi K. DuBose

## APPELLANT'S OPENING BRIEF

Derek C. Reinbold
KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
dreinbold@kellogghansen.com

*Counsel for Appellant Susan
Drazen and the Settlement Class*

February 18, 2026

*(additional counsel on inside cover)*

Earl P. Underwood, Jr.
UNDERWOOD & RIEMER, P.C.
21 South Section Street
Fairhope, AL 36532

Evan M. Meyers
Eugene Y. Turin
MCGUIRE LAW, P.C.
55 West Wacker Drive, 9th Fl.
Chicago, IL 60601

Mark K. Wasvary
MARK K. WASVARY, P.C.
2401 West Big Beaver Road,
Ste. 100
Troy, MI 48084

Michael J. McMorrow
MCMORROW LAW, P.C.
118 North Clinton St., Ste. 108
Chicago, IL 60661

John R. Cox
JRC LEGAL
30941 Mill Lane, Suite G-334
Spanish Fort, AL 36527

Robert M. Hatch
Phillip A. Bock
David M. Oppenheim
BOCK HATCH & OPPENHEIM, LLC
203 N. La Salle St., Ste. 2100
Chicago, IL 60601

Trinette G. Kent
KENT LAW OFFICES
3219 Camelback Rd., Ste. 588
Phoenix, AZ 85018

Bryan Gowdy
CREED & GOWDY P.A.
865 May Street
Jacksonville, FL 32202

*Class and Plaintiffs' Counsel*

# STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Susan Drazen respectfully requests oral argument.

# TABLE OF CONTENTS

Page

STATEMENT REGARDING ORAL ARGUMENT ...................................i

TABLE OF AUTHORITIES...............................................................iv

STATEMENT OF RELATED CASES ...................................................vii

JURISDICTIONAL STATEMENT .........................................................1

INTRODUCTION.................................................................................2

STATEMENT OF THE ISSUE...............................................................4

STATEMENT OF THE CASE ...............................................................5

A.   GoDaddy Reserves The Right To Terminate This TCPA
     Settlement Only If Final Approval Is Vacated On Grounds
     Other Than The Fee Award .....................................................5

B.   After A "Tortured History" Of Appeals, This Court Vacates
     Final Approval Solely Because "Attorney's Fees Were Not
     Calculated Properly" ...............................................................7

C.   The District Court Nonetheless Permits GoDaddy To
     Terminate The Years-Old Settlement .....................................9

D.   The District Court Certifies Its Termination Decision For
     Immediate Appeal ................................................................10

SUMMARY OF ARGUMENT ...............................................................12

STANDARD OF REVIEW...................................................................15

ARGUMENT ....................................................................................16

I.   *Drazen IV* Held Only That "Attorney's Fees Were Not
     Calculated Properly" ..............................................................16

A. This Court's Opinion Was "Delivered Solely In Section III.C.iii," Which Held That Fees "Were Not Calculated Properly" "Because The Settlement Was A Coupon Settlement" ...................................................................16

B. The Only Abuse Of Discretion A Majority Found "Concern[ed] The Application Of The Law In Granting Class Counsel's Motion For Attorney's Fees" ........................18

II. The District Court Misinterpreted This Court's Mandate In Permitting GoDaddy To Terminate ...............................................20

A. The District Court Improperly Assumed That This Court Could Not Vacate Just To Recalculate Fees ..............20

B. The District Court Read *Drazen IV*'s Mandate Too Broadly .......................................................................................22

III. The Court Should Reverse The Termination Order To Prevent Manifest Injustice ...........................................................25

CONCLUSION ......................................................................................27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

**CASES**

*Bankers Tr. Co. v. Bethlehem Steel Corp.*, 761 F.2d 943 (3d Cir. 1985) ...............................................................................23

*Briggs v. Pennsylvania R.R. Co.*, 334 U.S. 304 (1948) ..........................15

*California Pizza Kitchen Data Breach Litig., In re*, 129 F.4th 667 (9th Cir. 2025) .................................................................21

*Cox Enters., Inc. v. News-Journal Corp.*, 794 F.3d 1259 (11th Cir. 2015) ....................................................................15

*De La Teja v. United States*, 321 F.3d 1357 (11th Cir. 2003)................19

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980)........................26

*\*Drazen v. Pinto*:

    *"Drazen I,"* 41 F.4th 1354 (11th Cir. 2022) .....................................7

    *"Drazen II,"* 74 F.4th 1336 (11th Cir. 2023).....................................7

    *"Drazen III,"* 101 F.4th 1223 (11th Cir. 2024) ............................7, 8

    *\*"Drazen IV,"* 106 F.4th 1302 (11th Cir. 2024)........ 2, 3, 8, 9, 12-14, 16-19, 23, 24

*Easysaver Rewards Litig., In re*, 906 F.3d 747 (9th Cir. 2018) ..............21

*Friedman v. Market St. Mortg. Corp.*, 520 F.3d 1289 (11th Cir. 2008) ....................................................................20

*Linneman v. Vita-Mix Corp.*, 970 F.3d 621 (6th Cir. 2020)..............24, 25

*LNC Invs., Inc. v. First Fid. Bank, N.A.*, 173 F.3d 454 (2d Cir. 1999)...................................................................22

*Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig., In re,* 952 F.3d 471 (4th Cir. 2020) ......................................................21

*Maggard v. O'Connell,* 703 F.2d 1284 (D.C. Cir. 1983)........................20

*Marks v. United States,* 430 U.S. 188 (1977)........................................18

*McKinney-Drobnis v. Oreshack,* 16 F.4th 594 (9th Cir. 2021) ..............21

*Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions, In re,* 148 F.3d 283 (3d Cir. 1998)........................................................21

*Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513 (6th Cir. 1993) ......................................................................26

*Rodriguez v. West Publ'g Corp.,* 563 F.3d 948 (9th Cir. 2009) .............. 21

*Salcedo v. Hanna,* 936 F.3d 1162 (11th Cir. 2019).................................. 7

*Sanford Fork & Tool Co., In re,* 160 U.S. 247 (1895) .............................15

*Sibbald v. United States,* 37 U.S. (12 Pet.) 488 (1838)..........................15

*United States v. City of Miami,* 664 F.2d 435 (Former 5th Cir. 1981) ..................................................... 12, 19, 23

*United States v. Millenium Lab'ys, Inc.,* 923 F.3d 240 (1st Cir. 2019).............................................................................22

## STATUTES

Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*.................. 1

28 U.S.C.:

    § 1292(b).........................................................................................1

    § 1712 .............................................................................................6

## OTHER AUTHORITIES

Motion to Lift Stay, *Herrick v. GoDaddy.com, LLC*, No. 18-16048
   (9th Cir. Mar. 3, 2025), Dkt. No. 56................................................ 10

18B Charles Alan Wright & Arthur R. Miller, *Federal Practice
   and Procedure* (3d ed. 2025 update) ........................................ 15, 25

# STATEMENT OF RELATED CASES

Counsel is aware of the following cases that will directly affect or be directly affected by this Court's decision in this appeal:

1. *Drazen et al. v. Pinto*, No. 21-10199 (11th Cir.).

2. *Drazen v. GoDaddy.com, LLC*, No. 1:19-cv-00563-KD-B (S.D. Ala.). All citations to the district court docket are to Case No. 1:19-cv-00563-KD-B.

# JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 because plaintiffs sued under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*

The district court certified this interlocutory appeal on April 9, 2025. App.217. Plaintiff-Appellant Susan Drazen timely sought permission to appeal on April 21, 2025, *see* Petition for Permission to Appeal, *Drazen v. GoDaddy.com, LLC*, No. 25-90008 (11th Cir. Apr. 21, 2025), Dkt. No. 1, which this Court granted on September 30, 2025, App.228.

This Court has appellate jurisdiction under 28 U.S.C. § 1292(b).

**INTRODUCTION**

This appeal turns on what this Court ordered in *Drazen v. Pinto* ("*Drazen IV*"), 106 F.4th 1302 (11th Cir. 2024)—the *fourth* appellate decision in this long-running Telephone Consumer Protection Act case.

In 2020, after years of hard-fought litigation, GoDaddy.com, LLC agreed to settle for $35 million. But soon after the district court approved the settlement, the Supreme Court interpreted the TCPA in a way that would have sharply reduced—perhaps eliminated—the value of this case. So GoDaddy, now regretting its bargain, sought a way out.

The settlement agreement gives GoDaddy a limited right to terminate. As relevant here, GoDaddy can call off the agreement if an appellate court vacates final settlement approval on some substantive ground—that is, for reasons other than an improper attorney-fee award.

There has been no such vacatur on the merits. *Drazen IV* vacated final settlement approval *only* because the district court had improperly calculated attorney fees. The panel held that the "opinion of this Court [wa]s ***delivered solely in Section III.C.iii***, in which Judges Wilson, Branch, and Tjoflat joined." *Id.* at 1304 (per curiam) (emphasis added). Section III.C.iii was captioned: "III.  Discussion"; "***C.  Attorney's Fees***

2

***Were Not Calculated Properly***"; and "iii.  The Class Action Fairness Act Applies Because the Settlement was a Coupon Settlement."  *Id.* at 1327, 1338, 1342 (emphasis added).  The district court had "calculat[ed] attorney's fees in this case as a percentage of the possible relief available to class members."  *Id.* at 1351.  That was "an abuse of discretion," *id.*, the Court held, because attorney fees in a CAFA coupon settlement must "be based on the value of the coupons that are redeemed, the lodestar method, or a combination of both," *id.* at 1350. So the Court vacated final approval and remanded for fee recalculation.

That disposition did not trigger GoDaddy's termination right.  Yet the district court concluded otherwise, parsing dicta and unstated "implication[s]," App.215, from this Court's reasoning to infer a broader vacatur than the panel's majority endorsed.

This Court should clarify that it meant what it said in *Drazen IV*: "Because the Settlement was a Coupon Settlement," "Attorney's Fees Were Not Calculated Properly."  Nothing more.  The termination order should be reversed.

## STATEMENT OF THE ISSUE

Did this Court, in *Drazen IV*, "vacate the Final Approval Order on any basis other than the approval of attorney's fees?"  App.227.

## STATEMENT OF THE CASE

### A. GoDaddy Reserves The Right To Terminate This TCPA Settlement Only If Final Approval Is Vacated On Grounds Other Than The Fee Award

This appeal arises from three consolidated class actions alleging that GoDaddy violated the Telephone Consumer Protection Act. Six years ago, the parties reached a $35 million settlement extinguishing the claims of approximately 1.26 million class members who received unsolicited text messages and calls from GoDaddy between November 2014 and December 2016. App.33, App.37 (¶¶ 26, 50). The settlement gave class members two options: collect $35 in cash or a $150 voucher redeemable for GoDaddy products or services. App.38-39 (¶ 51). Of those who filed claims, 52% chose the voucher. *See* App.179 (Decl. of Professor William B. Rubenstein ¶ 36).

The district court granted final approval over a single objector's opposition, finding the settlement to be fair and reasonable. *See* App.118-119. Because the settlement offered class members the choice between cash and a voucher, the court concluded it was not a "coupon settlement" under the Class Action Fairness Act, so "CAFA's provisions that base attorneys' fee awards on coupons actually redeemed is

inapplicable." App.111; *see* 28 U.S.C. § 1712. The court thus awarded class counsel $7 million in attorney fees—20% of the settlement— highlighting the "very favorable outcome" they had achieved through "arms-length negotiations facilitated by a respected retired judge." App.111-112.

The objector appealed, leaving only this Court's review as the final barrier to disbursing settlement funds and fees. Under the settlement, either party can terminate the agreement if an appellate court undoes the final approval order on some substantive ground:

> This Agreement may be terminated by either Class Counsel or Defendant . . . [if] an appellate Court vacates or reverses the Final Approval Order on any basis other than the approval of the attorney's fees, costs, and expenses payable to Class Counsel or a service award to Plaintiffs.

App.54-55 (¶ 84.c). And "[i]n the event of a termination," the parties would "return to the status *quo ante* in the" underlying cases, which had been pending in multiple district courts across the country. App.55 (¶ 86).

**B.** **After A "Tortured History" Of Appeals, This Court Vacates Final Approval Solely Because "Attorney's Fees Were Not Calculated Properly"**

What followed was, in the district court's words, "a long and tortured history" of appellate litigation.  App.212.

Initially, a panel of this Court vacated the settlement on standing grounds, reasoning that class members who received just one text lacked concrete injury under *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019).  *See Drazen v. Pinto* ("*Drazen I*"), 41 F.4th 1354, 1362 (11th Cir. 2022).  But the en banc Court reversed, abrogating *Salcedo* and holding that even one unwanted message constitutes a concrete injury. *See Drazen v. Pinto* ("*Drazen II*"), 74 F.4th 1336, 1346 (11th Cir. 2023).

On remand, Judge Tjoflat purported to vacate the settlement again—this time on the merits.  *See Drazen v. Pinto* ("*Drazen III*"), 101 F.4th 1223, 1231 (11th Cir. 2024) (opinion of Tjoflat, J.).  Judge Tjoflat's opinion appeared first, bore the label "Opinion of the Court," and used the collective pronoun "we" approximately 80 times across its 110 pages. But only one part of that lengthy opinion—Section III.C.iii— commanded a majority.  The two other panelists did not join Judge Tjoflat's opinion at all but "concur[red] in the judgment to the extent

7

that [they] concur[red] with the analysis in Section III.C.iii." *See id.* at 1278 (Wilson, J., concurring in the judgment, joined by Branch, J.).

Confused by this disposition, the class sought rehearing to clarify what the Court's opinion actually was. *See* Petition for Panel Rehearing at 1, *Drazen v. Pinto*, No. 21-10199 (11th Cir. July 2, 2024), Dkt. No. 142. The panel obliged, withdrawing *Drazen III* and issuing a new opinion that made clear "that the opinion of this Court is delivered solely in Section III.C.iii, in which Judges Wilson, Branch, and Tjoflat joined." *See Drazen IV*, 106 F.4th at 1304 (per curiam).

In that section, the Court concluded that "C. Attorney's Fees Were Not Calculated Properly," *id.* at 1338, because "iii. The Class Action Fairness Act Applies," *id.* at 1342, and requires courts to calculate fees in coupon settlements "based on the value of the coupons that are redeemed, the lodestar method, or a combination of both," *id.* at 1350. By calculating fees as a percentage of the total possible relief, the district court "used the wrong legal standard" and thus "abuse[d] [its] discretion." *Id.* at 1351.

## C. The District Court Nonetheless Permits GoDaddy To Terminate The Years-Old Settlement

The district court initially interpreted this Court's mandate as affecting only the attorney fee award. App.119. But GoDaddy disagreed and sought to terminate the full settlement. Dist. Ct. Dkt. 118-2 (Notice of Termination).

After further briefing and argument, the district court changed its interpretation of the mandate. Though acknowledging both sides' arguments had "merit," the court allowed GoDaddy to terminate the settlement. App.218-219; *see* App.212 ("Perhaps it should be obvious to the undersigned what action this Court should take . . . . But it isn't.").

This termination order rested on three tentative conclusions: *first*, that this Court had not expressly affirmed the settlement; *second*, that footnote 69 of *Drazen IV*, which reserved the issue of whether CAFA requires heightened scrutiny of coupon settlements, implicitly signaled that reconsideration was required, *see* 106 F.4th at 1342 n.69; and *third*, that *Drazen IV*'s suggestion that courts consider coupon redemption rates when awarding attorney fees potentially signaled that the full settlement (not just fees) had been vacated. App.213-216. Because the district court read these statements as requiring more than

mere fee recalculation, it held that GoDaddy could invoke its termination right.  App.216.

## D.  The District Court Certifies Its Termination Decision For Immediate Appeal

The district court's termination order set off a flurry of motions in multiple courts.  *First*, GoDaddy moved to decertify one of the underlying class actions that had been consolidated for settlement.  *See* Dist. Ct. Dkt. 150.  *Second*, GoDaddy moved to dismiss that and another of the consolidated cases.  Dist. Ct. Dkts. 152, 154.  *Third*, GoDaddy moved to lift a stay of appeal in the third case, which had been pending in the Ninth Circuit before settlement.  *See* Motion to Lift Stay, *Herrick v. GoDaddy.com, LLC*, No. 18-16048 (9th Cir. Mar. 3, 2025), Dkt. No. 56.

The class moved to certify an immediate appeal.  And to preserve the status quo, the class moved to hold briefing on GoDaddy's motions in abeyance, which the district court granted.  Dist. Ct. Dkt. 156; App.17.

The district court then certified its termination order for immediate appellate review, recognizing that its interpretation of this Court's mandate had introduced significant uncertainty that should be

10

resolved before further proceedings began.  App.217.  In certifying the appeal, the court concluded (1) that the interpretation of *Drazen IV*—specifically, whether that opinion vacated the entire settlement or only the attorney fee award—presented a controlling legal question; (2) that substantial grounds existed for a difference of opinion because of the "high level of uncertainty" over the scope of this Court's mandate; and (3) that immediate appellate resolution would materially advance the ultimate termination of the litigation by clarifying whether the settlement remained valid, potentially eliminating the need for further litigation across multiple courts.  App.222-226.

This Court then granted permission to appeal.  App.232.

## SUMMARY OF ARGUMENT

**I.** *Drazen IV* did not trigger GoDaddy's termination right. Under the mandate rule, a district court has no authority to depart from this Court's orders in a prior appeal. The district court erred when it misread *Drazen IV* to permit GoDaddy to terminate the settlement.

**A.** *Drazen IV* did not vacate settlement approval on the merits. The Court's opinion was "delivered solely" in Section III.C.iii, captioned "Attorney's Fees Were Not Calculated Properly" "Because the Settlement was a Coupon Settlement." 106 F.4th at 1304, 1338, 1342. That section held only that the district court abused its discretion in calculating fees as a percentage of the total recovery, not based on redeemed coupon value, the lodestar, or a combination of both. *Id.* at 1343, 1350-51. The concurrence confirmed that Section III.C.iii "addressed only" those fee-calculation issues. *Id.* at 1353. So the only basis for vacatur was improperly calculated fees.

**B.** "[N]o majority exist[ed] to grant broader relief." *United States v. City of Miami*, 664 F.2d 435, 436 (Former 5th Cir. 1981) (en banc) (per curiam). Although Judge Tjoflat discussed additional perceived errors, a majority of the panel "would have addressed only"

12

fees. *Drazen IV*, 106 F.4th at 1353 (Wilson, J., concurring in the judgment, joined by Branch, J.). The standard of review confirms the point: this Court reviews settlement approvals for abuse of discretion, and the only such abuse all three judges found was miscalculated fees.

**II.** The district court misinterpreted this Court's mandate in permitting GoDaddy to terminate.

**A.** *First*, the district court improperly assumed that this Court *could not* vacate and remand merely for recalculation of attorney fees. It reasoned that because *Drazen IV* did not "clearly affirm" the settlement, it must have vacated it. But a district court is bound by what the appellate court actually orders—not by what it might have ordered but did not. And appellate courts routinely vacate improper fee awards while leaving settlement approval otherwise intact— particularly where, as here, the agreement is not conditioned on fees. Nothing in *Drazen IV* suggests that the majority's silence on the merits amounted to a vacatur of the settlement itself.

**B.** *Second*, the district court expanded *Drazen IV*'s mandate based on two passages that cannot support a broader remand. It relied on footnote 69, in which the panel "le[ft] for another day" whether

13

CAFA requires district courts to give heightened scrutiny to coupon settlements. *Id.* at 1342 n.69. A question reserved is not a question decided. That footnote did not vacate the settlement by implication.

The same is true of the sentence stating that a district court "may abuse its discretion if it does not consider the redemption rate of the coupons" when applying the lodestar method. *Id.* at 1350. That sentence appears in a subsection titled "Calculating Attorney's Fees Under CAFA" and addresses how to assess the reasonableness of a fee award in a coupon settlement. Read in context, it provides guidance on fee calculation—not a directive to reevaluate the settlement itself.

**III.** Allowing GoDaddy to terminate now—years after agreeing to settle and now that the legal landscape has shifted—hands the company a windfall. Thousands of class members relied on the final approval order and submitted claims expecting payment. Class counsel likewise relied on that approval, defending the settlement through multiple appeals. Nothing in *Drazen IV* disturbed the settlement itself; it vacated only the fee award. The mandate rule does not permit using that limited vacatur as a vehicle to unwind the entire agreement. The termination order should be reversed.

**STANDARD OF REVIEW**

This Court reviews de novo "the district court's interpretation and application of this [C]ourt's mandate" in a prior appeal. *Cox Enters., Inc. v. News-Journal Corp.*, 794 F.3d 1259, 1272 (11th Cir. 2015). Under the mandate rule, "an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Pennsylvania R.R. Co.*, 334 U.S. 304, 306 (1948). That principle "inheres in the nature of judicial hierarchy." 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4478.3 (3d ed. 2025 update); *see Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506, 1511 (11th Cir. 1987) (en banc) ("Each tier in the judicial hierarchy has its responsibility once a mandate is issued."). And it leaves no room for revision on remand. A lower court may not "vary [the mandate], or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal." *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895); *see Sibbald v. United States*, 37 U.S. (12 Pet.) 488, 492 (1838).

# ARGUMENT

GoDaddy's contractual termination right is narrow. It arises only if this Court "vacates or reverses the Final Approval Order on any basis other than the approval of the attorney's fees." App.55 (¶ 84.c). So this appeal is about the scope of the mandate in *Drazen IV*. More specifically, the dispositive question is whether *Drazen IV* vacated the full settlement or just its attorney-fee award.

Properly read, *Drazen IV* vacated only the attorney-fee component of the final approval order and remanded for fee recalculation under CAFA. The district court erred by reading the mandate more broadly and permitting GoDaddy to terminate the settlement.

## I. *Drazen IV* Held Only That "Attorney's Fees Were Not Calculated Properly"

### A. This Court's Opinion Was "Delivered Solely In Section III.C.iii," Which Held That Fees "Were Not Calculated Properly" "Because The Settlement Was A Coupon Settlement"

Judge Tjoflat's opinion in *Drazen IV* was organized into four parts: background, legal standard, analysis, and conclusion. *See* 106 F.4th at 1309, 1326, 1327, 1351. Part III (analysis) identified three purported errors in the district court's final approval order:

16

- "A. Issues Related to Rule 23(e)," *id.* at 1328-34;

- "B. The Notice Did Not Comply with Rule 23(c) and Due Process," *id.* at 1334-37; and

- "***C. Attorney's Fees Were Not Calculated Properly***," *id.* at 1338-51 (emphasis added).

Only Part C held any binding ruling. The "opinion of this Court," the full panel explained, was "delivered solely in Section III.C.iii, in which Judges Wilson, Branch, and Tjoflat joined." *Id.* at 1304 (per curiam).

Section III.C.iii itself was captioned "The Class Action Fairness Act Applies Because the Settlement was a Coupon Settlement." *Id.* at 1342. It adopted two legal rules: *First*, a settlement that provides coupons—even among other relief—qualifies as a coupon settlement under CAFA. *Id.* at 1343. *Second*, courts must calculate fees in such settlements "based on the value of the coupons that are redeemed, the lodestar method, or a combination of both." *Id.* at 1350.

Applying those rules, the Court held that the district court "used the wrong legal standard"—and thus abused its discretion—by calculating fees as a percentage of the possible relief, not based on the settlement-coupon value or the attorneys' lodestar. *Id.* at 1351.

17

The concurrence confirms the narrow scope of that holding. Section III.C.iii, the concurring judges explained, "addressed only the district court's erroneous determination that this was not a coupon settlement and the related attorney's fees calculation issue." *Id.* at 1353 (Wilson, J., concurring in the judgment, joined by Branch, J.). That error required remand for the district court to recalculate fees under CAFA's standards. *See id.* at 1352 (Tjoflat, J.); *id.* at 1353 (Wilson, J., concurring in the judgment, joined by Branch, J.).

That is all this Court mandated. Because *Drazen IV* did not vacate final approval "on any basis other than the approval of the attorney's fees," GoDaddy had no right to terminate the settlement.

**B.    The Only Abuse Of Discretion A Majority Found "Concern[ed] The Application Of The Law In Granting Class Counsel's Motion For Attorney's Fees"**

No majority endorsed vacatur on any other ground. Although Judge Tjoflat discussed additional perceived errors, the other two panelists "would have addressed only" the fee award. *Id.* at 1353. Under *Marks v. United States*, 430 U.S. 188, 193 (1977), a fragmented decision stands for the "position taken by those Members who concurred in the judgments on the narrowest grounds." And where "no majority

18

exist[ed] to grant broader relief," the narrowest agreed-upon rationale governs the mandate on remand. *United States v. City of Miami*, 664 F.2d 435, 436 (Former 5th Cir. 1981) (en banc) (per curiam).

Here, that narrowest—and only majority-supported—basis for vacatur was the improper calculation of attorney fees. That basis became "the order of the court by which the district court should be guided on the remand." *Id.*

The standard of review confirms the point. Settlement approval is reviewed for abuse of discretion. *Drazen IV*, 106 F.4th at 1326 (opinion of Tjoflat, J.). Judge Tjoflat identified three perceived abuses. *Id.* at 1327; *see supra* pp. 16-17. But only the third—"concern[ing] the application of the law in granting Class Counsel's motion for attorney's fees," *Drazen IV*, 106 F.4th at 1327—commanded a majority.

Ordinary appellate-remedy principles point the same way. This Court has instructed that vacatur should encompass only "the portion of the district court's order that addresses" the relevant issue. *De La Teja v. United States*, 321 F.3d 1357, 1364 (11th Cir. 2003). Vacatur is issue-specific. And here, the only issue on which a majority agreed to reverse was the fee award.

19

There is thus no basis to conclude that a silent majority vacated "the Final Approval Order on any basis other than the approval of the attorney's fees." App.55 (¶ 84.c.). GoDaddy had no right to terminate.

## II. The District Court Misinterpreted This Court's Mandate In Permitting GoDaddy To Terminate

The mandate rule binds the district court to "any findings of fact or conclusions of law made by the court of appeals in a prior appeal of the same case." *Friedman v. Market St. Mortg. Corp.*, 520 F.3d 1289, 1294 (11th Cir. 2008). The district court erred in departing from that principle.

### A. The District Court Improperly Assumed That This Court Could Not Vacate Just To Recalculate Fees

The district court first reasoned that this Court must have vacated the settlement because it did not "clearly affirm" it. App.213. That reasoning gets the mandate rule backwards. An appellate court need not re-approve what it did not disturb: "That [an issue] could have been decided is not sufficient to foreclose the issue on remand." *Maggard v. O'Connell*, 703 F.2d 1284, 1289 (D.C. Cir. 1983).

As the Ninth Circuit recently explained, when a "settlement agreement [i]s not conditioned on attorneys' fees," an appellate court

20

"can vacate the fee award without undoing the settlement approval." *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 678-79 (9th Cir. 2025). That is this case. The parties expressly agreed that "the Court's failure to approve, in whole or in part, any award for fees or cost and expenses shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination." App.52 (¶ 77).

Courts routinely vacate only attorney fee awards while not otherwise invalidating class settlements. *See, e.g.*, *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 606 (9th Cir. 2021); *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 491-92 (4th Cir. 2020); *In re Easysaver Rewards Litig.*, 906 F.3d 747, 763 (9th Cir. 2018); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 968-69 (9th Cir. 2009); *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 290 (3d Cir. 1998). The district court distinguished these decisions because in some of them, "where only the attorney fee award was vacated, the courts clearly stated that the settlement was affirmed." App.213. But the court cited no authority requiring that an appellate court expressly affirm a settlement lest it be invalidated by implication. And of course

21

there was no such statement here:  Judge Tjoflat would have vacated the settlement on several grounds.  It makes no sense to expect his opinion to have a clear affirmation of the settlement in Section III.C.iii when he spent the other 100 pages explaining why he would have vacated it several times over (just not with majority support).

More broadly, appellate courts routinely vacate and remand on one issue without addressing others. *See, e.g., LNC Invs., Inc. v. First Fid. Bank, N.A.*, 173 F.3d 454, 464 (2d Cir. 1999) ("Having decided to vacate the district court's judgment and remand for a new trial, we need not reach the other issues raised on appeal.").  Courts sometimes explain why they reach additional issues—typically because those issues "are likely to arise again on remand."  *Id.*; *see also United States v. Millenium Lab'ys, Inc.*, 923 F.3d 240, 251 (1st Cir. 2019) (collecting cases).  But without that explanation, silence means only that the issue was unnecessary to resolve.  That is the case here.

## B.    The District Court Read *Drazen IV*'s Mandate Too Broadly

The district court next erred by concluding that this Court issued a binding judgment beyond the vacatur of attorney fees.  As explained above, the only majority-supported basis for vacatur in *Drazen IV* was

the improper calculation of fees. "[N]o majority exist[ed] to grant broader relief." *City of Miami*, 664 F.2d at 436.

Yet the district court concluded that *Drazen IV* required "reevaluat[ion of] the Settlement Agreement as well as attorney fees under the standard of CAFA." App.214. The two sentences on which it relied do not bear that weight.

*First*, the district court looked to *Drazen IV*'s footnote 69, where the panel "le[ft] for another day" whether CAFA imposes heightened scrutiny on coupon settlements. 106 F.4th at 1342 n.69. The district court read that reservation as "impl[ying]" that it had been directed to reconsider approval of the Settlement Agreement. App.215.

The opposite is true. Footnote 69 merely acknowledged a legal question the panel chose not to resolve. By definition, a question "left for another day" is not part of the holding and cannot expand the scope of this Court's mandate. *See Bankers Tr. Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 950 (3d Cir. 1985) (the mandate rule's "long-settled corollary" is that issues not "expressly or implicitly disposed of" remain open). So this Court, in that footnote, could not have found error in the settlement's approval nor instructed the district court to revisit it.

*Second*, the district court relied on a sentence stating that a court applying the lodestar method "may abuse its discretion if it does not consider the redemption rate of the coupons." *Drazen IV*, 106 F.4th at 1350. That sentence addresses only the calculation of attorney fees.

Context confirms this conclusion. The sentence appears in a subsection titled "Calculating Attorney's Fees Under CAFA." *Id.* at 1349. The paragraph immediately preceding the relevant sentence adopts the governing rule: "[t]he attorney's fees for coupon settlements under CAFA may be based on [1] the value of the coupons that are redeemed, [2] the lodestar method, or [3] a combination of both." *Id.* at 1350. The following discussion addresses the "[n]atural[] . . . next question[s]" of "when and how to determine the value of coupons that are actually redeemed." *Id.* The final sentence clarifies that redemption rate may also inform reasonableness even when the lodestar method is used.[1]

---

[1] Under the lodestar method, fees ordinarily turn on the number of hours reasonably worked multiplied by a reasonable hourly rate, not coupon redemption. But in a coupon settlement, the redemption rate helps illuminate "the degree of success obtained" for the class, which is "the most critical factor" in assessing whether any fee award is "reasonable." 106 F.4th at 1350 (quoting *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 628 (6th Cir. 2020)). And because every fee award must

The district court stated it could not reconcile "the placement of [the relevant] sentence" with the idea that it was limited to fees. App.216. But the above exegesis confirms that the sentence "is merely dicta and simply provides instruction for district courts in the future." *Id.* And dicta, however instructive, "are not part of the mandate." Wright & Miller § 4478.3.

## III. The Court Should Reverse The Termination Order To Prevent Manifest Injustice

The district court's ruling hands GoDaddy a windfall at the class's expense. Class members relied on a court-approved settlement, submitted claims, and expected payment. The settlement was approved, noticed, and implemented. But years later, the termination order strips those class members of relief they were told was secured.

That result undermines the core function of the class-action device. Class actions aggregate small claims because individual litigation would be irrational, but their success relies on the promise of adequate compensation to counsel. This case illustrates the point. It

---

be "reasonable," "a district court *may* abuse its discretion if it does not consider the redemption rate." *Id.* (emphasis added); *see id.* ("a district court *will often* abuse its discretion if it fails to consider the redemption rate") (quoting *Linneman*, 970 F.3d at 628) (emphasis added).

has had what the district court called a "long and tortured history." App.212  For nearly a decade, class counsel litigated without compensation against a well-funded defendant.  They secured a $35 million settlement before an intervening Supreme Court decision diminished the value of the claims.  They defended certification and approval through multiple appeals and prevailed en banc in expanding TCPA standing.  The district court itself described the settlement as "a very favorable outcome for Settlement Class Members."  App.111.

When counsel achieve such a result, courts "must make sure that counsel is fairly compensated." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).  That principle reflects not special solicitude for lawyers, but recognition of the structural role class actions play.  As the Supreme Court has explained:

> The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

26

That description fits here.  No individual plaintiff would bring a federal suit against a multibillion-dollar company to recover modest TCPA statutory damages; the cost of litigation would eclipse the recovery.  Allowing termination now would defeat settled expectations, nullify years of litigation, and reward post hoc regret.  The mandate rule does not authorize that outcome.  The Court should reverse.

## CONCLUSION

The Court should reverse the district court's order permitting GoDaddy to terminate the settlement.

Dated:  February 18, 2026

Derek C. Reinbold
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
dreinbold@kellogghansen.com

*Counsel for Appellant Susan Drazen and the Settlement Class*

27

Earl P. Underwood, Jr.
UNDERWOOD & RIEMER, P.C.
21 South Section Street
Fairhope, AL 36532

Evan M. Meyers
Eugene Y. Turin
MCGUIRE LAW, P.C.
55 West Wacker Drive, 9th Fl.
Chicago, IL 60601

Mark K. Wasvary
MARK K. WASVARY, P.C.
2401 West Big Beaver Road,
Ste. 100
Troy, MI 48084

Michael J. McMorrow
MCMORROW LAW, P.C.
118 North Clinton St., Ste. 108
Chicago, IL 60661

John R. Cox
JRC LEGAL
30941 Mill Lane, Suite G-334
Spanish Fort, AL 36527

Robert M. Hatch
Phillip A. Bock
David M. Oppenheim
BOCK HATCH & OPPENHEIM, LLC
203 N. La Salle St., Ste. 2100
Chicago, IL 60601

Trinette G. Kent
KENT LAW OFFICES
3219 Camelback Rd., Ste. 588
Phoenix, AZ 85018

Bryan Gowdy
CREED & GOWDY P.A.
865 May Street
Jacksonville, FL 32202

*Class and Plaintiffs' Counsel*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7) because, according to the word-processing system used to prepare it (Microsoft Word 365), it contains 4,766 words, excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(f).

I further certify that this brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared using Microsoft Word 365 in a proportionally spaced typeface (Century Schoolbook, 14 point).

Dated:  February 18, 2026

_____
Derek C. Reinbold

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Derek C. Reinbold