# United States Court of Appeals
*for the*
# Eleventh Circuit

**SUSAN DRAZEN, ON BEHALF OF HERSELF AND
OTHERS SIMILARLY SITUATED,**

*Plaintiff-Appellant,*

**v.**

**GODADDY.COM, LLC,**

*Defendant-Appellee,*

**JUAN ENRIQUE PINTO,**

*Interested Party-Appellee.*

On Appeal from the United States District Court
for the Southern District of Alabama,
No. 1:19-00563-KD-B, Hon. Kristi K. DuBose

**DEFENDANT-APPELLEE GODADDY.COM, LLC'S BRIEF**

Robert S. Clark
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel: 215-665-2041
Email: robertclark@cozen.com

Jeffrey M. Monhait
COZEN O'CONNOR
3 WTC, 175 Greenwich Street
55th Floor
New York, NY 10007
Tel: 215-665-2084
Email: jmonhait@cozen.com

*Attorneys for Defendant-Appellee GODADDY.COM, LLC*

**STATEMENT REGARDING ORAL ARGUMENT**

Defendant-Appellee GoDaddy.com, LLC respectfully requests oral argument. Oral argument is likely to aid this Court's decisional process due to the procedural posture of this appeal and because this brief raises several issues that Plaintiff-Appellant Susan Drazen's opening brief failed to address. Absent oral argument, Defendant-Appellee GoDaddy.com, LLC would be unable to address or respond to arguments by Plaintiff-Appellant Susan Drazen on these additional issues because such response would be raised for the first time in her reply brief.

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

STATEMENT OF THE ISSUES.........................................................................3

STATEMENT OF THE CASE .............................................................................4

    I.      Case Background....................................................................................4

    II.    Appellate Decisions on Standing .........................................................6

    III.   This Court Vacated Final Approval and the Order on Attorney's Fees................................................................................................................6

    IV.   GoDaddy Terminates the Agreement......................................................8

SUMMARY OF ARGUMENT ..........................................................................10

STANDARD OF REVIEW ................................................................................13

ARGUMENT ......................................................................................................15

    I.      *Drazen IV* Vacated the Final Approval Order in Full. ........................15

         A.    Plaintiff Confuses the Court's Judgment and Opinion. ............15

         B.    The Entire *Drazen IV* Panel Expressly Concurred in the Judgment Judge Tjoflat Announced. ........................................20

         C.    The Opinion of the Court in *Drazen IV* Can Only Support a General Vacatur................................................................24

             1.    The Opinion in *Drazen IV* Is Consistent with Vacating Final Approval. .................................................25

             2.    Nothing in *Drazen IV*'s Opinion or Judgment Suggests that the Court Affirmed Final Approval..........32

         D.    *Marks* Is Irrelevant to Interpreting the Judgment in *Drazen IV*. ..................................................................................36

    II.    The *Drazen IV* Panel's Basis for Vacating Final Approval Was, in Part, for Reasons Other than the Fee Award.................................37

III. In the Alternative, if the *Drazen IV* Panel Erroneously Failed to Render an Appellate Judgment as to Final Approval, this Court Should Recall the Mandate to Prevent Injustice. ..................................40

CONCLUSION ..................................................................................................43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AcryliCon USA, LLC v. Silikal GMBH & Co.*,
46 F.4th 1317 (11th Cir. 2022) ...........................................................13, 14, 27

*Arnesen v. Raimondo*,
115 F.4th 410 (5th Cir. 2024) .............................................................26

*Bankers Tr. Co. v. Bethlehem Steel Corp.*,
761 F.2d 943 (3d Cir. 1985) ..............................................................28

*Bittner v. United States*,
598 U.S. 85 (2023).............................................................................21

*BP p.l.c. v. Mayor of Baltimore*,
593 U.S. 230 (2021)......................................................................33, 41

*Callahan v. U.S. Dep't of Health & Hum. Servs.*,
939 F.3d 1251 (11th Cir. 2019) ........................................................26

*CFPB v. Ocwen Fin. Corp.*,
30 F.4th 1079 (11th Cir. 2022) .........................................................25

*Christian Healthcare Ctrs., Inc. v. Nessel*,
117 F.4th 826 (6th Cir. 2024) ...........................................................26

*Cote v. Philip Morris USA, Inc.*,
985 F.3d 840 (11th Cir. 2021) .....................................................14, 27

*De La Teja v. United States*,
321 F.3d 1357 (11th Cir. 2003) ........................................................18

*Defries v. Union Pac. R.R. Co.*,
104 F.4th 1091 (9th Cir. 2024) .........................................................26

*Drazen v. Pinto*,
41 F.4th 1354 (11th Cir. 2022) ...........................................................6

*Drazen v. Pinto* ("*Drazen II*"),
74 F.4th 1336 (11th Cir. 2023) (*en banc*)......................................................6, 33

*Drazen v. Pinto* ("*Drazen IV*"),
106 F.4th 1302 (11th Cir. 2024) ...................................................*passim*

*Egbert v. Boule*,
596 U.S. 482 (2022)......................................................................23

*Emergency Recovery, Inc. v. Hufnagle*,
77 F.4th 1317 (11th Cir. 2023) ..............................................13, 14

*Facebook Inc. v. Duguid*,
592 U.S. 395 (2021)......................................................................10

*Figueroa v. Sharper Image Corp.*,
517 F. Supp. 2d 1292 (S.D. Fla. 2007)....................................26

*Friedman v. Mkt. St. Mortg. Corp.*,
520 F.3d 1289 (11th Cir. 2008) ................................................13

*Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*,
570 F.3d 1210 (11th Cir. 2009) ................................................19

*Gulf Coast Bldg. & Supply Co. v. Int'l Bd. of Elec. Workers*,
460 F.2d 105 (5th Cir. 1972) ....................................................14

*Harbourside Place, LLC v. Town of Jupiter, Fla.*,
958 F.3d 1308 (11th Cir. 2020) ................................................23

*Harris v. Town of S. Pines*,
110 F.4th 633 (4th Cir. 2024) ..................................................26

*Hewitt v. United States*,
606 U.S. 419 (2025).....................................................................18

*In re Cal. Pizza Kitchen Data Breach Litig.* ("*CPK*"),
129 F.4th 667 (9th Cir. 2025) ........................................32, 34, 39

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993) .............................................28

*In re Easysaver Rewards Litig.*,
906 F.3d 747 (9th Cir. 2018) ..................................................................34, 39

*In re HP Inkjet Printer Litig.*,
716 F.3d 1173 (9th Cir. 2013) ................................................................26, 36

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod.*
*Mktg., Sales Pracs. & Prod. Liab. Litig.*,
952 F.3d 471 (4th Cir. 2020) ..................................................................34, 38

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ..........................................................................35

*Johnson v. Nocco*,
91 F.4th 1114 (11th Cir. 2024) ......................................................................15

*Johnson v. Sec'y, Fla. Dep't of Corr.*,
132 F.4th 1309 (11th Cir. 2025) ....................................................................30

*Kim v. Allison*,
8 F.4th 1170 (9th Cir. 2021) ..........................................................................35

*Learning Res., Inc. v. Trump*,
607 U.S. ----, 146 S. Ct. 628 (2026) ........................................................20, 21

*Linneman v. Vita-Mix Corp.*,
970 F.3d 621 (6th Cir. 2020) ..........................................................................29

*Litman v. Mass. Mut. Life Ins. Co.*,
825 F.2d 1506 (11th Cir. 1987) (*en banc*) ......................................13, 14, 24, 25

*LNC Invs., Inc. v. First Fid. Bank, N.A.*,
173 F.3d 454 (2d Cir. 1999) ..........................................................................32

*Maggard v. O'Connell*,
703 F.2d 1284 (D.C. Cir. 1983) ................................................................15, 27

*Mahoney v. TT of Pine Ridge, Inc.*,
2017 WL 9472860 (S.D. Fla. Nov. 20, 2017) ..................................................26

*Mallory v. Norfolk S. Ry.*,
  600 U.S. 122 (2023) .............................................................21, 22

*Marks v. United States*,
  430 U.S. 188 (1977) ..........................................................15, 36, 37

*McKinney-Drobnis v. Oreshack*,
  16 F.4th 594 (9th Cir. 2021) .............................................34, 38

*Nat'l Pork Producers Council v. Ross*,
  598 U.S. 356 (2023) .................................................................21

*Parker v. Scrap Metal Processors, Inc.*,
  468 F.3d 733 (11th Cir. 2006) ............................................14

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..............................................34

*Russell v. Kohl's Dep't Stores, Inc.*,
  755 F. App'x 605 (9th Cir. 2018) .......................................35

*Santiago v. Honeywell Int'l, Inc.*,
  2025 WL 415758 (S.D. Fla. Feb. 6, 2025) .........................27

*Schwartz v. Destination Maternity Corp.*,
  2015 WL 13648569 (C.D. Cal. May 18, 2015) ...................28

*Sobel v. Hertz Corp.*,
  2011 WL 2559565 (D. Nev. June 27, 2011)........................26

*Sprint Commc'ns, Inc. v. Jacobs*,
  571 U.S. 69 (2013)...........................................................33, 41

*Stanley v. City of Sanford*,
  606 U.S. 46 (2025)....................................................................21

*Swinton v. SquareTrade, Inc.*,
  454 F. Supp. 3d 848 (S.D. Iowa 2020) ..............................28

*Tallahassee Branch of NAACP v. Leon County*,
  827 F.2d 1436 (11th Cir. 1987) .....................................18, 25

*United States v. Hughes*,
  849 F.3d 1008 (11th Cir. 2017), *rev'd on other grounds*, 584 U.S.
  675 (2018) ...................................................................................................15

*United States v. Martinez*,
  606 F.3d 1303 (11th Cir. 2010) .....................................................................18

*United States v. Utsick*,
  45 F.4th 1325 (11th Cir. 2022) ................................................................18, 25

*United States v. W.B.H.*,
  664 F.3d 848 (11th Cir. 2011) .......................................................................19

*United States v. Whatley*,
  719 F.3d 1206 (11th Cir. 2013) .....................................................................23

*Vidal v. Elster*,
  602 U.S. 286 (2024)........................................................................................21

*Whole Woman's Health v. Jackson*,
  595 U.S. 30 (2021)..........................................................................................23

*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*,
  881 F.3d 835 (11th Cir. 2018) .......................................................13, 14, 24, 25

*Wylie v. Island Hotel Co. Ltd.*,
  774 F. App'x 574 (11th Cir. 2019) ...........................................................13, 28

**Statutes**

28 U.S.C. § 1292(b) ..............................................................................10, 17

28 U.S.C. § 1712(e) .......................................................................................26

47 U.S.C. § 227................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 23(e).............................................................................7, 34, 38

Fed. R. Civ. P. 25(a)(1)....................................................................................5

## INTRODUCTION

In *Drazen v. Pinto* ("*Drazen IV*"), 106 F.4th 1302 (11th Cir. 2024), this Court unanimously vacated the district court's final approval of the parties' class settlement agreement (the "Agreement"). Judge Tjoflat announced the Court's judgment, the opinion of the Court with respect to section III(C)(iii) of his opinion, and an additional opinion with respect to all other sections of his opinion. The Court's judgment was as follows: "[W]e **VACATE** the judgment of the District Court and its order granting attorney's fees and **REMAND** the cases to the District Court for further proceedings…." *Drazen IV*, 106 F.4th at 1352 (emphasis in original). "**SO ORDERED**." *Id.* (emphasis in original).

That judgment controls this appeal under the mandate rule, but Plaintiff-Appellant Susan Drazen ("Plaintiff") nevertheless seeks to attack that judgment. In some parts of her opening brief, Plaintiff even insists that the judgment of *Drazen IV* was actually to *affirm* final approval, even though the opinion does not contain the word "affirm" or any variation of it. But, the entire *Drazen IV* panel agreed on the appellate judgment: that is what a concurrence *in the judgment* means. The unanimous judgment in *Drazen IV* was to vacate both the judgment of final approval *and* the award of attorneys' fees.

The Court's opinion amply supported that result. The Court's core holding in *Drazen IV* was that the Class Action Fairness Act ("CAFA") applied to the

1

Agreement because it was a coupon settlement. The Court expressly noted that this held implications for final approval, including: (1) whether CAFA requires heightened scrutiny of coupon settlements; and (2) the impact of coupon redemption rates in assessing whether a coupon settlement as a whole provides fair, reasonable, and adequate relief to the class. The District Court had not reached those issues because it previously held that CAFA did not apply to the Agreement. So rather than decide those issues in the first instance, this Court vacated not only the fee award, but also final approval, to allow the District Court to resolve these new, open issues.

Based on this Court's judgment and opinion in *Drazen IV*, Defendant-Appellee GoDaddy.com, LLC ("GoDaddy") had the contractual right to terminate the Agreement because this Court vacated final approval, in part, "on any basis other than the approval of the attorney's fees, costs, and expenses payable to Class Counsel or a service award to Plaintiffs." App.55 (¶ 84(c)).[1] GoDaddy exercised that termination right, and the District Court agreed with GoDaddy's interpretation of both this Court's judgment and the scope of its opinion. Upholding that contractual right does not confer a "windfall," as Plaintiff claims—it enforces

---

[1] Citations to "App.___" are to Plaintiff's Appendix (Dkt. 15) or GoDaddy's Supplemental Appendix, which is being filed contemporaneously. Plaintiff's Appendix consists of pages App.1-232, while GoDaddy's Supplemental Appendix is numbered App.233-329.

the parties' agreement, including the parties' negotiated allocation of the risk of an appellate vacatur.

The plain text of *Drazen IV* resolves this appeal. Every member of the panel concurred in the Court's announced judgment—a general vacatur. Moreover, while the Court's opinion resolved some issues related to the fee award, it also identified distinct reasons why it was required to vacate final approval once it determined that the Agreement was a coupon settlement under CAFA. Therefore, GoDaddy had a termination right, which it properly exercised. This Court should affirm.

## STATEMENT OF THE ISSUES

1. Whether the *Drazen IV* panel vacated final approval, affirmed final approval *sub silentio*, or failed to render any appellate judgment as to final approval?

2. If the *Drazen IV* panel vacated final approval, whether it did so, at least in part, "on any basis other than the approval of the attorney's fees, costs, and expenses payable to Class Counsel or a service award to Plaintiffs," App.55 (¶ 84(c))?

3. If the *Drazen IV* panel inadvertently failed to render any appellate judgment as to final approval, whether this Court should recall the mandate in *Drazen IV* to prevent injustice?

## STATEMENT OF THE CASE

## I.  Case Background

This case involves two consolidated actions asserting putative class claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.[2] Nearly six years ago, the parties entered into the Agreement to resolve these matters. App.28-71. Under the Agreement, class members could elect to receive either $35 or a $150 voucher for GoDaddy products or services. App.32, App.37-38, App.50-51 (¶¶ 19, 48, 51, 75). Class members submitted 11,662 claims for $35 ($408,170 total) and 12,396 claims for a $150 voucher ($1,859,400). App.95. Therefore, even assuming a redemption rate of 100% for the vouchers and treating them as fully equivalent to cash, the Agreement delivered at most $2,267,570 in actual relief for the class. *Id.* The actual relief to the class is thus well short of the "$35 million" valuation that Plaintiff continues to place on the settlement. *See* Plaintiff Br. at 5.

In the Agreement, the parties negotiated and agreed that they would each have the right to terminate the Agreement in certain circumstances, including if "an appellate Court vacates or reverses the Final Approval Order on any basis other than

---

[2] A third matter addressed in the now-terminated settlement, *Herrick v. GoDaddy.com, LLC*, No. 18-16048 (9th Cir.), remains stayed before the Ninth Circuit. *See, e.g.*, App.39. Plaintiff's statement that this appeal involves "three consolidated class actions" is inaccurate. *See* Plaintiff's Opening Brief ("Plaintiff Br."), Dkt. 14, at 5.

the approval of the attorney's fees, costs, and expenses payable to Class Counsel or a service award to Plaintiffs," or if the "Effective Date does not occur." App.55 (¶ 84(c)-(d)). "In the event of a termination, this Agreement shall be considered null and void, and all of Plaintiffs', Class Counsel's, and Defendant's obligations under the Agreement shall cease to be of any force and effect." App.55 (¶ 85).

On December 23, 2020, the District Court granted Plaintiffs'[3] motion for final approval of the Agreement and granted in part and denied in part Plaintiffs' motion for attorneys' fees, costs, and expenses, awarding Class Counsel $7 million in attorneys' fees (the "Final Approval Order"). App.86-87, App.112, App.116; App.33 (¶ 24) (defining "Class Counsel"). Even assuming a hypothetical redemption rate of 100% for the vouchers, the $7 million in attorneys' fees was *over three times* the relief delivered to the class. *Cf.* App.95 (describing relief to class).

Shortly thereafter, Pinto appealed "from the Court's Final Judgment and Order Approving Class Settlement … and all opinions and orders that merge therein." App.266-267.

---

[3] "Plaintiffs" is defined to mean both Plaintiff-Appellant Susan Drazen and Plaintiff Jason Bennett ("Bennett"), who remains a class representative, but is not an appellant because he unfortunately passed away in 2022. Plaintiffs' counsel never moved to substitute Bennett with any successor, and the time to do so under Fed. R. Civ. P. 25(a)(1) has long passed.

## II. Appellate Decisions on Standing

On appeal, this Court initially vacated final approval because certain class members lacked Article III standing under then-existing circuit precedent. *Drazen v. Pinto*, 41 F.4th 1354, 1362-63 (11th Cir. 2022). The *en banc* Court subsequently overruled that precedent and remanded to the panel for consideration of "the CAFA issues raised in Pinto's appeal," which this *en banc* Court noted were related to "the district court's approval of the class settlement." *Drazen v. Pinto* ("*Drazen II*"), 74 F.4th 1336, 1341, 1346 (11th Cir. 2023) (*en banc*).

## III. This Court Vacated Final Approval and the Order on Attorney's Fees

On remand, this Court "vacate[d] the judgment of the District Court *and* its order granting attorney's fees and remand[ed] the cases to the District Court for further proceedings consistent with the holdings of this opinion." *Drazen IV*, 106 F.4th at 1352 (emphasis added and removed). This judgment, placed at the end of Judge Tjoflat's principal opinion, is the only judgment the Court announced.

While two members of the panel only joined Section III(C)(iii) of the principal opinion, they also concurred in the judgment, meaning the judgment was unanimous. *Id.* at 1353 (Wilson, J., concurring in the judgment) ("[T]he Court correctly vacates and remands…."). Judges Wilson and Branch noted in the concurrence in the judgment that they "would have addressed only the district court's erroneous

6

determination that this was not a coupon settlement *and* the related attorney's fees calculation issue." *Id.* (emphasis added).

Plaintiff sought panel rehearing to clarify which sections of the principal opinion Judges Wilson and Branch had joined, but Plaintiff did not request clarification or modification of the Court's judgment. *See Drazen IV*, 106 F.4th at 1304. The Court clarified that "the opinion of this Court is delivered solely in Section III.C.iii," but otherwise reissued identical opinions. *Id.* Therefore, even after panel rehearing, Judge Tjoflat announced the Court's judgment—the Court "vacate[d] the judgment of the District Court and its order granting attorney's fees and remand[ed] the cases to the District Court for further proceedings consistent with the holdings of this opinion"—and Judges Wilson and Branch concurred in that judgment, explaining that the Court "correctly vacates and remands this case…." *Id.* at 1352-53 (emphasis removed).

In Section III(C)(iii), in addition to addressing attorneys' fees, the Court held that CAFA applied to the Agreement because it was a coupon settlement. *Id.* at 1342-49, 1351. That determination impacted the legal framework governing the evaluation of the Agreement itself, not merely the calculation of fees. The Court noted that CAFA may require the District Court to apply a heightened standard when re-evaluating the settlement on remand. *Id.* at 1342 n.69 ("The 'fair, reasonable, and adequate' language [in CAFA] is the same as in Rule 23(e)(2), but we leave for

another day if this requires something more."). The Court also noted that, "even when [attorneys'] fees are based on the lodestar method, a district court may abuse its discretion if it does not consider the redemption rate of the coupons *during the fair, reasonable, and adequate assessment of the settlement as a whole*" (*i.e.*, when considering final approval, not when considering attorneys' fees). *Id.* at 1350 (citation omitted) (emphasis added).

## IV. GoDaddy Terminates the Agreement

On remand, the District Court preliminarily read the mandate as addressing only attorneys' fees, but directed the parties to brief the scope of this Court's mandate. App.118-119. Plaintiff filed a renewed motion for attorneys' fees in which she claimed this Court had "affirmed" final approval, *see* App.126, App.134, even though this Court unanimously vacated final approval, and did not "affirm" in any part. *Drazen IV*, 106 F.4th at 1352. Plaintiff also claimed that Judge Wilson's concurrence in the judgment was merely "inaccurately titled." *See* App.134.

In Plaintiff's renewed motion for attorneys' fees, Class Counsel sought $10.5 million in attorneys' fees—*even more* than the $7 million award this Court rejected. Even if one assumed a hypothetical voucher redemption rate of 100%, this would reflect *over four-and-a-half times* the relief to the class. *Cf.* App.95 (describing relief to class). If one assessed the value to the class based only on cash payments, as Plaintiff presented no evidence of actual or estimated redemption rates, the requested

attorneys' fees would be *over twenty-five times* the relief to the class. *Cf. id.*; *see also* App.155-181. In fact, Plaintiff's own expert observed that "Class Counsel's fee award would constitute the bulk of the recovery in this lawsuit." App.180.

The District Court never had to address Class Counsel's attempt to seek *more* fees than previously granted (and vacated), however, because GoDaddy exercised its contractual right to terminate the Agreement. App.270-273. In response to Plaintiff's motion, GoDaddy explained that it had a right to terminate the Agreement because this Court had "vacate[d] … the Final Approval Order" in part on a "basis other than the approval of the attorney's fees." App.55 (¶ 84(c)). Pinto agreed that this Court "vacated both fees and settlement approval." *See* Dist. Ct. Dkt. 136 at 1.

With the benefit of adversarial briefing, the District Court recognized that this Court had vacated settlement approval, not just the fee award. App.216. The District Court rejected Plaintiff's argument that this Court's direction to "consider the redemption rate of the coupons during the fair, reasonable, and adequate assessment of the settlement as a whole" was mere "dicta" to be applied in every future case except this one. *See id.*; App.297-298 (acknowledging that this sentence "suggests how a court might consider the redemption rate during the fair, reasonable, and adequate assessment of the settlement as a whole," not when "considering how to figure attorneys' fees").

The District Court found that this Court vacated final approval of the Agreement based, in part, on the District Court's "error in not applying CAFA to the … Agreement analysis (specifically considering the redemption rate in the fair, reasonable and adequate analysis, and determining whether a heightened scrutiny was required)." App.216. Accordingly, the District Court held that GoDaddy properly terminated the Agreement. *Id.*

At Plaintiff's request, the District Court certified its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). App.227. This Court granted permission to appeal, App.232, and this interlocutory appeal followed.[4]

## SUMMARY OF ARGUMENT

Plaintiff conflates the judgment and opinion of *Drazen IV* throughout her brief, but this Court should take them in turn.

This Court's judgment in *Drazen IV* is clear. Judge Tjoflat announced that both the judgment of final approval and the attorneys' fees order were vacated, and Judges Wilson and Branch concurred in that judgment. The word "affirmed" is not in the judgment nor in either opinion. That should be the end of interpreting *Drazen IV*'s judgment.

---

[4] It is undisputed that Plaintiffs' TCPA claims are meritless following the Supreme Court's decision in *Facebook Inc. v. Duguid*, 592 U.S. 395 (2021). *See, e.g.*, Plaintiff's Petition for Permission to Appeal Certified Interlocutory Order Under 28 U.S.C. § 1292(b) at 24, *Drazen v. GoDaddy.com, LLC* (No. 25-90008) ("[T]he Supreme Court rendered the class's claims worthless.").

Instead, Plaintiff employs a fundamentally unsound method of interpreting the mandate: ignore the expressly announced judgment and attempt to infer the judgment that Plaintiff believes *should* have issued based on Plaintiff's inaccurate interpretation of the reasoning in this Court's opinion. The mandate rule forbids a district court from reviewing the mandate for apparent error in this fashion, and a vacatur is presumed to be general unless expressly limited.

Even under Plaintiff's erroneous analytical framework, the *Drazen IV* opinion provides ample reason to vacate final approval. After holding that CAFA applied to the Agreement, this Court identified at least two new issues that the District Court would have to reach for the first time on remand before deciding whether to re-approve the Agreement. *First*, the District Court would have to decide whether CAFA requires heightened scrutiny of coupon settlements. *Second*, the District Court would have to decide the impact of the coupon redemption rate in assessing the fairness, reasonableness, and adequacy of the entire settlement as a whole.

Plaintiff waves this all away by saying it is dicta that was unnecessary to render an appellate judgment. Plaintiff is incorrect. *Drazen IV* was an appeal from a judgment of final approval, and Pinto challenged the final approval of the Agreement. Plaintiff never explains how *every* issue bearing on final approval could somehow become unnecessary to resolve such an appeal. A failure to consider any of these arguments before affirming final approval would be incompatible with this

Court's constitutional duty to decide those issues necessary to resolve the cases that come before it. It would also be incompatible with the numerous cases in which this Court's sister circuits separately analyzed and rendered judgments on both final approval and a fee award when both were challenged. Plaintiff does not cite a single contrary case.

For essentially the same reasons, the vacatur of final approval was based, at least in part, on a reason "other than the approval of the attorney's fees, costs, and expenses payable to Class Counsel or a service award to Plaintiffs." App.55 (¶ 84(c)). The determination that CAFA applied to the Agreement impacted *both* the approval of the Agreement (including the legal framework governing the evaluation of the Agreement as a whole) and the issue of attorneys' fees. Therefore, GoDaddy properly exercised its termination right.

In the alternative, in the unlikely event that this Court concludes the *Drazen IV* panel failed to render a judgment on final approval, it should recall the mandate and decide those issues it deems necessary to render a complete appellate judgment. In the event that an objector appeals (as occurred here), GoDaddy's obligation to fund the settlement is triggered if and when this Court affirms. Therefore, absent a recall of the mandate, this case would hang in limbo indefinitely until the parties decided to terminate the Agreement again.

Of course, this Court should not reach that issue because *Drazen IV* unambiguously vacated final approval and did so, in part, for reasons that swept more broadly than attorneys' fees. This Court should affirm.

**STANDARD OF REVIEW**

This Court "review[s] *de novo* the district court's interpretation and application of [its] mandate in a previous appeal." *Emergency Recovery, Inc. v. Hufnagle*, 77 F.4th 1317, 1324 (11th Cir. 2023) (citing *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 843 (11th Cir. 2018)).

It is well-settled that a district court is obligated to follow this Court's mandate on remand. The mandate rule "'is a specific application of the 'law of the case' doctrine which provides that subsequent courts are bound by any findings of fact or conclusions of law made by the court of appeals in a prior appeal of the same case.'" *AcryliCon USA, LLC v. Silikal GMBH & Co.*, 46 F.4th 1317, 1326 (11th Cir. 2022) (quoting *Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289, 1294 (11th Cir. 2008)); *accord Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1511 (11th Cir. 1987) (*en banc*) (same); *Wylie v. Island Hotel Co. Ltd.*, 774 F. App'x 574, 576-77 (11th Cir. 2019) (same).

"When an appellate court issues a clear and precise mandate, … the district court is obligated to follow the instruction. Neither the district court nor any party is free to ignore the law of the case." *Winn-Dixie Stores, Inc.*, 881 F.3d at 843 (quoting

*Litman*, 825 F.2d at 1516). "A district court when acting under an appellate court's mandate, cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." *Id.* (quoting *Litman*, 825 F.2d at 1510-11) (emphasis added); *accord Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 741 (11th Cir. 2006) ("It is not within the district court's power to second guess … this Court's conclusion or revise this Court's order." (citations omitted)).

At the same time, it is routine for this Court to leave issues open for the district court to resolve on remand, particularly after a vacatur, and particularly when the district court did not reach such issues prior to the original appeal. "Although 'a mandate is completely controlling as to all matters within its compass,' a district court remains 'free to pass upon any issue which was not expressly or impliedly disposed of on appeal.'" *Emergency Recovery, Inc.*, 77 F.4th at 1328 (quoting *Gulf Coast Bldg. & Supply Co. v. Int'l Bd. of Elec. Workers*, 460 F.2d 105, 107 (5th Cir. 1972)); *see also AcryliCon*, 46 F.4th at 1327 ("[T]he mandate rule does not and could not extend to issues the appellate court never addressed, and thus, the district court is free to address, as a matter of first impression, those issues not disposed of on appeal." (citing *Cote v. Philip Morris USA, Inc.*, 985 F.3d 840, 846 (11th Cir. 2021))). As Plaintiff correctly notes in her brief (but then misapplies), "[t]hat [an

issue] could have been decided [in the prior appeal] is not sufficient to foreclose the issue on remand." *See* Plaintiff Br. at 20 (quoting *Maggard v. O'Connell*, 703 F.2d 1284, 1289 (D.C. Cir. 1983)).

**ARGUMENT**

**I.**     ***Drazen IV* Vacated the Final Approval Order in Full.**

**A.     Plaintiff Confuses the Court's Judgment and Opinion.**

As a threshold matter, Plaintiff incorrectly conflates this Court's *judgment* with its *opinion* (*i.e.*, the reasons for a judgment) and treats them as one and the same. *See, e.g.*, *Marks v. United States*, 430 U.S. 188, 193-94 (1977) (distinguishing between an appellate judgment, which is the result of the case, and the holding of the appellate court, which is the "rationale explaining the result"); *United States v. Hughes*, 849 F.3d 1008, 1012 (11th Cir. 2017) (same), *rev'd on other grounds*, 584 U.S. 675 (2018); *see also Johnson v. Nocco*, 91 F.4th 1114, 1125 (11th Cir. 2024) (Branch, J., concurring in the judgment) (noting the distinction between an appellate judgment as to whether "the judgment of the district court is due to be reversed" and the "reasons … set forth in Judge Tjoflat's opinion" for that judgment). Plaintiff comingles questions about the scope of *Drazen IV*'s judgment and opinion by presenting a single, omnibus issue: "Did this Court, in *Drazen IV*, 'vacate the Final Approval Order on any basis other than the approval of attorney's fees?'" *See* Plaintiff Br. at 4 (quoting App.227).

15

This Court should address the scope of *Drazen IV*'s judgment and the scope of *Drazen IV*'s opinion separately, in that order, for two reasons.

*First*, if this Court only considers the scope of *Drazen IV*'s opinion without addressing the scope of *Drazen IV*'s judgment (as Plaintiff appears to seek), the parties could end up back before this Court within the year seeking additional clarification, given Plaintiff's ever-shifting position on that judgment.

In her opening brief alone, Plaintiff takes at least three distinct positions as to the appellate judgment rendered in *Drazen IV*. Several times, Plaintiff concedes that this Court vacated final approval. *See* Plaintiff Br. at 2 ("*Drazen IV* vacated final settlement approval…."); *id.* at 3 ("So the Court vacated final approval…."). At other times, Plaintiff calls this judgment into question. *See id.* at 7 ("Judge Tjoflat [only] *purported* to vacate the settlement" (emphasis added)); *id.* at 21-22 (arguing that, because it is possible for a court to "vacate only attorney fee awards while not otherwise invalidating class settlements," that is what occurred here, suggesting final approval was affirmed); *id.* at 3 (suggesting that "the panel's majority" did not "endorse[]" a "broader vacatur"); *id.* at 11 (suggesting that the controlling question of law in this interlocutory appeal is "whether [*Drazen IV*] vacated the entire settlement or only the attorney fee award"); *id.* at 16 (similar). There are even times when Plaintiff's brief can be read to suggest that *Drazen IV* rendered no judgment at

all on final approval. *See* Section III, *infra*. Plaintiff's positions are not only inconsistent—they would lead to fundamentally different results on remand.

Plaintiff's position was far clearer in the district court. Before GoDaddy terminated the Agreement, Plaintiff argued that this Court affirmed final approval *sub silentio* and that Judge Wilson's concurrence in the judgment was "inaccurately titled." App.132, App.126. The parties, however, disputed whether Plaintiff was obligated to move for final approval again; indeed, part of the basis of GoDaddy's termination of the Agreement was that Plaintiff failed to do so. App.271. Plaintiff sought—and this Court granted—permission to take an interlocutory appeal based on arguments that an immediate appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). To accomplish that, this Court must confirm that *Drazen IV* vacated the approval of the settlement *and* the order granting attorneys' fees, rather than rendering some other appellate judgment. Any other outcome would raise a risk of further disputes (and thus further potential appeals) concerning the scope of this Court's clear judgment in *Drazen IV*.

*Second*, Plaintiff's choice to conflate *Drazen IV*'s judgment with its opinion poses analytical difficulties. Because *Drazen IV* does not use the word "affirmed" or any variation thereof, Plaintiff attempts to infer a result from her characterization of the Court's opinion, effectively assuming that if the Court did not articulate reasons for vacating final approval (it did), then it must have affirmed final approval. But,

that is not how one determines the scope of a vacatur. A vacatur is general unless expressly limited.[5] *See, e.g.*, *United States v. Martinez*, 606 F.3d 1303, 1304 (11th Cir. 2010) (noting that "the reviewing court remains free to modify or limit the issues for review on remand as it may deem appropriate," but that a general vacatur is the "default," absent express limitations).

A vacatur is not limited merely because this Court did not criticize certain aspects of a district court's order or reasoning. *See, e.g.*, *Tallahassee Branch of NAACP v. Leon County*, 827 F.2d 1436, 1440 (11th Cir. 1987) (a general vacatur and remand "deprives th[e] [lower] court's opinion of precedential effect," even if the appellate court that issued the vacatur "did not criticize the rationale" of the portion of the opinion relied upon); *United States v. Utsick*, 45 F.4th 1325, 1335 (11th Cir. 2022) (an opinion "vacated on grounds unrelated" to a particular issue nevertheless deprived all sections of the opinion of any legal effect); *see also Hewitt v. United States*, 606 U.S. 419, 431 (2025) ("[V]acated court orders are void *ab initio* and thus lack any prospective legal effect.").

---

[5] Plaintiff claims this Court held otherwise in *De La Teja v. United States*, 321 F.3d 1357 (11th Cir. 2003). *See* Plaintiff Br. at 19. It did not. *De La Teja* only holds that "when an issue in a case becomes moot on appeal, the court not only must dismiss as to the mooted issue, but also vacate the portion of the district court's order that addresses it." 321 F.3d at 1364. Nowhere does *De La Teja* forbid a broader vacatur; it provides the minimum amount of a lower court's order that must be vacated, not the maximum. And, no portion of this case was moot on appeal in *Drazen IV*, so *De La Teja*'s holding is irrelevant.

Silence does not imply affirmance; it implies something left open for the district court to decide (or decide again) in the first instance, guided by the "statements in [its prior] vacated opinion" only based on whatever "persuasive value … they deserve." *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009); *see also United States v. W.B.H.*, 664 F.3d 848, 853 n.3 (11th Cir. 2011) (declining to accord vacated portion of opinion any weight where it lacked ongoing persuasive value). Plaintiff gets the rule backwards, suggesting that a vacatur is limited unless expressly made general. This Court's precedents say otherwise, and Plaintiff points to no express limitation on the scope of the vacatur.

To keep separate the two distinct issues of judgment and opinion, this Court should first address the appellate judgment rendered in *Drazen IV*. *See* Section I(B)-(D), *infra*. The answer to that question will determine what follows. If *Drazen IV* vacated final approval (it did), this Court will next have to determine the scope of *Drazen IV*'s opinion and whether it was based, in part, on some issue other than attorneys' fees (it was). *See* Section II, *infra*. If *Drazen IV* affirmed final approval—even though the *Drazen IV* panel never used the word "affirm" or offered any indication that they approved the settlement as a whole—then that alone would resolve this appeal. And, if *Drazen IV* erroneously failed to render an appellate judgment as to final approval, this Court would have to consider whether to recall

the mandate to avoid injustice and discharge this Court's constitutional obligation to decide those Cases and Controversies that properly come before it. *See* Section III, *infra*. Of course, the *Drazen IV* panel did issue an appellate judgment as to final approval when it vacated it, so this Court does not need to reach that issue.

**B.      The Entire *Drazen IV* Panel Expressly Concurred in the Judgment Judge Tjoflat Announced.**

Section III(C)(iii) of Judge Tjoflat's opinion in *Drazen IV* was the opinion of the Court, but that opinion did not announce any appellate judgment. Instead, Judge Tjoflat announced the Court's unanimous judgment at the conclusion of his opinion, as follows: "[W]e **VACATE** the judgment of the District Court and its order granting attorney's fees and **REMAND** the cases to the District Court for further proceedings consistent with the holdings of this opinion." *See Drazen IV*, 106 F.4th at 1352 (emphasis in original). This is the only judgment announced in any section of any opinion in *Drazen IV*. In fact, Plaintiff herself cites to this portion of Judge Tjoflat's opinion to show that *Drazen IV* resulted in a vacatur and remand (although she wrongly argues that it is limited to the portion of the Final Approval Order that addressed attorneys' fees). *See* Plaintiff Br. at 18.

It is not unusual for an appellate judge to announce the judgment of the Court at the end of their opinion, even though only some subset of that judge's opinion reflects the opinion of the Court. *See, e.g.*, *Learning Res., Inc. v. Trump*, 607 U.S. ----, 146 S. Ct. 628 (2026) ("Chief Justice Roberts announced the judgment of the

Court and delivered the opinion of the Court, except as to Parts II-A-2 and III."); *Stanley v. City of Sanford*, 606 U.S. 46 (2025) ("Justice Gorsuch announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I and II, and an opinion with respect to Part III…."); *Vidal v. Elster*, 602 U.S. 286 (2024) ("Justice Thomas announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I, II, and IV, and an opinion with respect to Part III…."); *Mallory v. Norfolk S. Ry.*, 600 U.S. 122 (2023) ("Justice Gorsuch announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I and III-B, and an opinion with respect to Parts II, III-A, and IV…."); *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356 (2023) ("Justice Gorsuch announced the judgment of the Court and delivered the opinion of the Court, except as to Parts IV-B, IV-C, and IV-D."); *Bittner v. United States*, 598 U.S. 85 (2023) ("Justice Gorsuch announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I, II-A, II-B, and III, and an opinion with respect to Part II-C….").

In a number of these cases, the Supreme Court announced its judgment at the end of the principal opinion even though the final section of that opinion was not the opinion of the Court. *See, e.g.*, *Learning Res., Inc.*, 146 S. Ct. at 646 (judgment announced at the end of Section III of Chief Justice Roberts's opinion, which was not the opinion of the Court); *Stanley*, 606 U.S. at 65 (judgment announced at the

end of Section III of Justice Gorsuch's opinion, which was not the opinion of the Court); *Mallory*, 600 U.S. at 146 (judgment announced at the end of Section IV-B of Justice Gorsuch's opinion, which was not the opinion of the Court).

That alone should be enough to resolve the question of whether the *Drazen IV* panel vacated final approval. *Drazen IV* announced only a single appellate judgment, so it must be the judgment of the Eleventh Circuit. In fact, Judge Tjoflat's announcement of the Court's judgment even ends with the bolded, capitalized words: "**SO ORDERED**." *Drazen IV*, 106 F.4th at 1352. That is as clear as it gets.

If there was any remaining doubt, Judge Wilson, joined by Judge Branch, issued an opinion "concurring in the judgment" that Judge Tjoflat announced, noting that "the district court erred, and the Court correctly vacates and remands this case back to the district court." *Id.* (Wilson, J., concurring in the judgment). Indeed, Judges Wilson and Branch did not indicate that they disagreed with Judge Tjoflat's reasoning, or that they would have reach a different conclusion as to the other "reasons for why the district court erred"—they simply did not reach those additional issues. *See id.* Instead, they "addressed only the district court's erroneous determination that this was not a coupon settlement and the related attorney's fees calculation issue," instead of the full range of infirmities Judge Tjoflat addressed. *See id.* This decision is far from a remonstration of Judge Tjoflat, but instead demonstrates judicial minimalism by addressing only the narrowest grounds

necessary for vacating a district court's decision. *See Harbourside Place, LLC v. Town of Jupiter, Fla.*, 958 F.3d 1308, 1322 (11th Cir. 2020) ("[W]e think this is a good opportunity for us to practice judicial minimalism, and decide no more than what is necessary to resolve [the case]."); *United States v. Whatley*, 719 F.3d 1206, 1224 (11th Cir. 2013) (Jordan, J., concurring in part and dissenting in part) (supporting "[d]ecisional minimalism" and defining it as "saying no more than necessary to justify an outcome, and leaving as much as possible undecided").

Judge Wilson's choice to concur in the judgment, even if not in the reasons contained outside Section III(C)(iii) of Judge Tjoflat's opinion, must be given effect. If Judge Wilson had disagreed with the announced judgment vacating final approval of the Agreement, his opinion would have been labelled a concurrence in the judgment in part and dissent in part. *See, e.g.*, *Egbert v. Boule*, 596 U.S. 482, 504-05 (2022) (Sotomayor, J., concurring in the judgment in part and dissenting in part) (captioning an opinion in this manner to agree with the "Court's judgment that Boule's First Amendment retaliation claim may not proceed," while disagreeing with the "Court's disposition of Boule's Fourth Amendment claim"); *Whole Woman's Health v. Jackson*, 595 U.S. 30, 62-63 (2021) (Sotomayor, J., concurring in the judgment in part and dissenting in part) (concurring in the disposition as to whether suit can proceed against certain public officials, while dissenting from the disposition as to whether suit can proceed against other public officials). That, of

course, is not how Judge Wilson labeled his concurrence in the judgment. *See Drazen IV*, 106 F.4th at 1352-53.

Plaintiff fails to offer any meaningful response to Judge Wilson's express agreement with the judgment Judge Tjoflat announced. Before the District Court, Plaintiff argued that Judge Wilson's concurrence in the judgment was "inaccurately titled." App.134. The mandate rule leaves no room for such an argument: the District Court was forbidden from "review[ing]" the judgment the *Drazen IV* panel announced, "even for apparent error." *Winn-Dixie Stores, Inc.*, 881 F.3d at 843 (quoting *Litman*, 825 F.2d at 1510-11). On appeal, Plaintiff abandoned this argument, instead ignoring how Judge Wilson captioned his opinion altogether. Neither approach holds water. This Court should give effect to Judge Wilson's choice to expressly concur in the judgment. The mandate rule requires nothing less, and this Court should go no further in determining *Drazen IV*'s judgment.

### C. The Opinion of the Court in *Drazen IV* Can Only Support a General Vacatur.

Plaintiff embarks on a different path by ignoring *both* the plain text of the judgment Judge Tjoflat announced *and* the plain text of Judge Wilson's concurrence in the judgment. Instead, Plaintiff searches through this Court's opinion in *Drazen IV*—that is, Section III(C)(iii) of Judge Tjoflat's opinion—and argues that the Court's reasoning failed to adequately support vacating final approval. Thus, in Plaintiff's view, final approval must have been affirmed *sub silentio*.

That is simply not how one interprets a mandate. *See* Section I(A), *supra.*

Under the mandate rule, the District Court was obligated to follow the judgment this

Court announced, whether or not it believed that the Court had adequately supported

the announced result in its opinion. *Winn-Dixie Stores, Inc.*, 881 F.3d at 843 (quoting

*Litman*, 825 F.2d at 1510-11). That is particularly true given that a vacatur is general

by default unless expressly limited. *See, e.g.*, *Tallahassee Branch of NAACP*, 827

F.2d at 1440; *Utsick*, 45 F.4th at 1335.

In any event, Plaintiff is wrong, as a general vacatur is the *only* result

consistent with the panel's opinion.

### 1. The Opinion in **Drazen IV** *Is Consistent with Vacating Final Approval.*

This Court's conclusion in *Drazen IV* that the Agreement was a coupon

settlement under CAFA was not limited to attorneys' fees—it altered the legal

framework governing the evaluation and final approval of the Agreement. Indeed,

the Court's opinion identified two additional ways in which CAFA would affect the

final approval of the settlement more broadly. The District Court had not reached

those issues because it had previously concluded that CAFA did not apply to the

settlement. Therefore, the *Drazen IV* panel vacated final approval so that the District

Court could resolve those issues on remand in the first instance, consistent with the

usual practice of this Court and all its sister circuits. *See CFPB v. Ocwen Fin. Corp.*,

30 F.4th 1079, 1086 (11th Cir. 2022) (emphasizing that this Circuit is "a court of

review, not a court of first view" in support of vacating and remanding to allow the district court to resolve legal issues that it did not previously reach "in the first instance") (quoting *Callahan v. U.S. Dep't of Health & Hum. Servs.*, 939 F.3d 1251, 1266 (11th Cir. 2019)); *see also Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 856-57 (6th Cir. 2024) (same as to a sister circuit); *Arnesen v. Raimondo*, 115 F.4th 410, 414 (5th Cir. 2024) (same); *Harris v. Town of S. Pines*, 110 F.4th 633, 648 (4th Cir. 2024) (same); *Defries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1109 (9th Cir. 2024) (same).

*First*, the Court declined to decide whether CAFA requires heightened scrutiny of coupon settlements.[6] *Drazen IV*, 106 F.4th at 1342 n.69 (citing 28 U.S.C. § 1712(e)). The District Court did not previously reach that question because it originally held that CAFA did not apply. If GoDaddy had not terminated the Agreement, the District Court would have needed to resolve that issue on remand, because it bears directly on final approval. This is consistent with Plaintiff's own

---

[6] As the District Court noted, "[m]ost courts that have considered the issue have found that CAFA requires a heightened standard of scrutiny when evaluating coupon settlement agreements." App.215 n.2; *see, e.g.*, *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (Section 1712(e) "invites increased judicial scrutiny of coupon settlements generally"); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007) (interpreting CAFA to be a "statutory directive to imply the application of a greater level of scrutiny to the existing criteria than existed pre-CAFA"); *Mahoney v. TT of Pine Ridge, Inc.*, 2017 WL 9472860, at *6 (S.D. Fla. Nov. 20, 2017) (same); *see also Sobel v. Hertz Corp.*, 2011 WL 2559565, at *6 (D. Nev. June 27, 2011) (collecting cases).

past positions: she previously argued to the District Court that Pinto's objection to final approval should be rejected because "CAFA is not in any way implicated in this settlement," which implicitly concedes that the application of CAFA could otherwise affect final approval. App.253-256.

Plaintiff acknowledges that the *Drazen IV* opinion "le[ft] for another day" whether CAFA requires heightened scrutiny of coupon settlements. *See* Plaintiff Br. at 23. But even though Plaintiff acknowledges that "the panel chose not to resolve" that question, Plaintiff contends that this Court's mandate somehow foreclosed the District Court from addressing this issue on remand. Plaintiff is incorrect. "[T]he mandate rule does not and could not extend to issues the appellate court never addressed, and thus, the district court is free to address, as a matter of first impression, those issues not disposed of on appeal." *AcryliCon*, 46 F.4th at 1327 (citing *Cote*, 985 F.3d at 846)); *see also Santiago v. Honeywell Int'l, Inc.*, 2025 WL 415758, at *4 (S.D. Fla. Feb. 6, 2025) (noting that it was "absolute frivolity" to claim that the district court could not address, as a matter of first impression, "issues not disposed of on appeal").

Indeed, Plaintiff's own brief contradicts her untenable position. "That [an issue] could have been decided is not sufficient to foreclose the issue on remand;" all "issues not 'expressly or implicitly disposed of' remain open." *See* Plaintiff Br. at 20, 23 (first quoting *Maggard v. O'Connell*, 703 F.2d 1284, 1289 (D.C. Cir. 1983);

27

then quoting *Bankers Tr. Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 950 (3d Cir. 1985)); *see also Wylie*, 774 F. App'x at 577 ("The trial court is free to address, as a matter of first impression, those issues not disposed of on appeal." (citations omitted)).

By vacating final approval, the *Drazen IV* panel ensured the District Court could address these open issues under CAFA in the first instance. Had the Court instead affirmed final approval, the District Court would have been foreclosed from addressing a question the panel unanimously noted would have to be answered to determine whether the District Court applied the correct legal standard in approving the Agreement. That would not have "le[ft] for another day" whether CAFA requires heightened scrutiny of coupon settlements; it would have ensured that day never arrived. *See* Plaintiff Br. at 23.

*Second*, the *Drazen IV* panel expressly noted that, when CAFA applies, "even when the fees are based on the lodestar method, a district court may abuse its discretion if it does not consider the redemption rate of the coupons *during the fair, reasonable, and adequate assessment of the settlement as a whole*."[7] *Drazen IV*, 106

---

[7] This is consistent with how district courts generally evaluate coupon settlements under CAFA. *See Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 864-70 (S.D. Iowa 2020) (considering redemption rates of coupons in determining whether to approve a coupon settlement); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 322-323, 323 n.27, 353 (N.D. Ga. 1993) (same); *Schwartz v. Destination Maternity Corp.*, 2015 WL 13648569, at *3 (C.D. Cal. May 18, 2015) (requiring

F.4th at 1350 (emphasis added) (citing *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 628 (6th Cir. 2020)). Again, the District Court did not previously consider the coupon redemption rate when issuing its Final Approval Order because it originally held that CAFA did not apply, so if GoDaddy had not terminated the Agreement, that issue also would have remained for the District Court to resolve in the first instance on remand.

Plaintiff has no response to the plain meaning of this sentence. Instead, while urging that this sentence must be "[r]ead in context," Plaintiff repeatedly quotes only half of it. *See* Plaintiff Br. at 14. At one point, Plaintiff states that the panel held that "a district court 'may abuse its discretion if it does not consider the redemption rate of the coupons' when applying the lodestar method." *Id.* At another, Plaintiff characterizes the sentence as "suggesti[ng] that courts consider coupon redemption rates when awarding attorney fees." *See id.* at 9. At another, Plaintiff boldly declares "[t]hat sentence addresses only the calculation of attorney fees." *See id.* at 24.

That is simply not what the opinion says. "[E]ven when the fees are based on the lodestar method, a district court may abuse its discretion if it does not consider the redemption rate of the coupons *during the fair, reasonable, and adequate assessment of the settlement as a whole*." *Drazen IV*, 106 F.4th at 1350 (emphasis

_____

evidence of estimated redemption rates of coupons in determining whether to approve a coupon settlement).

added). The "settlement as a whole" means the entire thing must be considered and, if necessary, set aside, not just the fee award. *Id.* Plaintiff's own expert agreed that "[t]he Circuit's command therefore situated the required review of the redemption rate as constituting one piece of an overall assessment of the settlement." App.179. At one time, Class Counsel also agreed with this plain reading. App.297-298 (acknowledging that this sentence "suggests how a court might consider the redemption rate during the fair, reasonable, and adequate assessment of the settlement as a whole," not when "considering how to figure attorneys' fees").

Despite this, Plaintiff never quoted or mentioned the words "settlement as a whole" in her opening brief. GoDaddy agrees with Plaintiff that this sentence must be "[r]ead in context." *See* Plaintiff Br. at 14. This Court should begin with the half of the sentence that Plaintiff repeatedly omitted.

In passing, Plaintiff also suggests this sentence was "merely dicta and simply provides instruction for district courts in the future." *See* Plaintiff Br. at 25 (citing App.216). That argument is circular. "Dicta are 'those portions of an opinion that are not necessary to deciding the case then before [the appellate court]." *Johnson v. Sec'y, Fla. Dep't of Corr.*, 132 F.4th 1309, 1315 (11th Cir. 2025) (citation omitted). Plaintiff points to the scope of *Drazen IV*'s opinion to infer its judgment, but when aspects of that opinion do not allow Plaintiff to reach her desired result, Plaintiff rejects them as dicta (*i.e.*, not necessary to render Plaintiff's preferred judgment).

But, when resolving an appeal that challenges final approval, it is clearly necessary to decide whether the District Court applied the correct legal standard for final approval. App.266-267. Plaintiff does little more than ask this Court to disregard those portions of the opinion that she does not like.

Plaintiff is simply wrong to suggest that the reasoning in Section III(C)(iii) of Judge Tjoflat's opinion was so narrow that it somehow justifies ignoring the express judgment that Judge Tjoflat announced and that Judges Wilson and Branch concurred in. The Court's opinion identified two open questions that bore directly on whether the Agreement should have received final approval, and this alone justified vacating and remanding for the District Court to resolve those questions in the first instance. That is exactly what the Court announced as the unanimous judgment of all three panelists in *Drazen IV*.

The structure of this Court's opinion does not compel a different result. Plaintiff makes much of her claim that the Court's opinion was "captioned 'Attorney's Fees Were Not Calculated Properly' 'Because the Settlement was a Coupon Settlement.'" *See* Plaintiff Br. at 12 (citation omitted). The actual heading of the Court's opinion was "The Class Action Fairness Act Applies Because the Settlement was a Coupon Settlement." *See Drazen IV*, 106 F.4th at 1342. While this resided in the broader Section III, which was captioned "Attorney's Fees Were Not Calculated Properly," neither Section III as a whole nor its caption were part of the

31

Court's opinion. *See id.* at 1338 (Tjoflat, J.). In any event, Plaintiff cites no authority to suggest that the headings included in this Court's opinions act to limit their scope and allow a district court to disregard portions of the mandate. No such authority exists. The district court is obligated to apply the *entire* mandate.

### 2. *Nothing in* **Drazen IV's** *Opinion or Judgment Suggests that the Court Affirmed Final Approval.*

The words "affirm" or "affirmed" appear nowhere in any opinion by any member of the *Drazen IV* panel, and no member of the panel authored a dissent. That forecloses Plaintiff's claim (at times) that this Court affirmed final approval.

To urge otherwise, Plaintiff begins from an undisputed premise that "an appellate court 'can vacate the fee award without undoing the settlement approval.'" *See* Plaintiff Br. at 20-21 (quoting *In re Cal. Pizza Kitchen Data Breach Litig.* ("*CPK*"), 129 F.4th 667, 678-79 (9th Cir. 2025)). That is true. The Court could have affirmed final approval, vacated only the award of attorneys' fees, and instructed the district court to only examine that issue. It just did not do so here.

Plaintiff is also correct that an appellate court may decline to address certain issues if they are "unnecessary to resolve" to render a complete appellate judgment. *See* Plaintiff Br. at 22 (citing *LNC Invs., Inc. v. First Fid. Bank, N.A.*, 173 F.3d 454, 464 (2d Cir. 1999)). That is a correct statement of the doctrine of judicial minimalism. *See, e.g.*, Section I(B), *supra*. For instance, if there are three potential bases to vacate final approval, a panel could sensibly decide to stop after agreeing

with only one, rather than continuing on to address every possible alternative basis supporting the result of vacatur. In fact, that is exactly what happened here. Judge Tjoflat identified at least three reasons to vacate final approval, but Judges Wilson and Branch decided to address only one of them. *See Drazen IV*, 106 F.4th at 1352-53 (Wilson, J., concurring in the judgment) ("While Judge Tjoflat's opinion discusses several reasons for why the district court erred, I would have addressed only the district court's erroneous determination that this was not a coupon settlement *and* the related attorney's fees calculation issue." (emphasis added)). Judges Wilson and Branch did not indicate that they disagreed with the other reasons Judge Tjoflat identified, only that they would not have reached them. *See id.*

Plaintiff is incorrect, however, that the issue of final approval *as a whole* was "unnecessary to resolve" such that the *Drazen IV* panel could have simply elected to affirm final approval without considering, rejecting, or even mentioning Pinto's other arguments. *See* Plaintiff Br. at 22. "[F]ederal jurisdiction is not optional; subject to exceptions not relevant here, 'courts are obliged to decide cases within the scope of federal jurisdiction' assigned to them." *BP p.l.c. v. Mayor of Baltimore*, 593 U.S. 230, 237 (2021) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)). As this *en banc* Court previously noted, Pinto's appeal "focus[ed] … on CAFA issues *and the district court's approval of the class settlement*." *Drazen II*, 74 F.4th at 1341 (emphasis added). Indeed, Pinto appealed "from the Court's Final

Judgment and Order Approving Class Settlement." App.266-267. Therefore, this Court was obligated to issue *some* appellate judgment as to final approval, whether that is to affirm, reverse, or vacate.

Consistent with this, in *every case* Plaintiff cited in which an appellate court vacated an award of attorneys' fees, the appellate court also analyzed whether it should affirm or vacate final approval if the objector raised such issues. *See In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 492 (4th Cir. 2020) ("Given our decision to vacate the Attorney's Fees Order, we are obliged to assess whether the Settlement Approval Order survives that decision."); *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 605-06 (9th Cir. 2021) ("[D]etermining that the vouchers are coupons under CAFA and vacating the fee award does not necessarily require invalidating the entire settlement approval order … [b]ut when an objector brings a challenge to the settlement agreement under Rule 23(e), we *must* analyze the entire agreement for fairness…." (emphasis added)); *In re Easysaver Rewards Litig.*, 906 F.3d 747, 760-63 (9th Cir. 2018) (vacating a fee award but separately analyzing whether a *cy pres* settlement was fair, reasonable, and adequate; the objector did not raise any other issues on appeal related to Rule 23(e)); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ("Having upheld approval of the settlement agreement, we must consider the award of attorney's fees to class counsel."); *CPK,*

129 F.4th at 677-80 (similarly analyzing and rejecting claims of error related to final approval first, and then vacating the attorneys' fees award on separate grounds); *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 290 (3d Cir. 1998) (same).

These are far from the only examples where appellate courts recognized that they had to reach the issue of final approval even after reaching a decision on an award of attorneys' fees, or vice versa. *See, e.g.*, *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021) ("Independent of the district court's abuse of discretion in its overall evaluation of the settlement, the approval of the attorneys' fees was itself an abuse of discretion."); *Russell v. Kohl's Dep't Stores, Inc.*, 755 F. App'x 605, 607-09 (9th Cir. 2018) (mem.) (analyzing and rejecting claims of error related to final approval first, and then vacating the attorneys' fees award on separate grounds). While these two issues can be intertwined, they do not invariably rise or fall together.

By contrast, Plaintiff cannot point to a single case in which an appellate court decided that the issue of final approval was somehow no longer live, merely because the appellate court vacated a fee award.

The *Drazen IV* panel could not affirm final approval *sub silentio* without considering claims of error properly raised in Pinto's appeal that, if meritorious, would require a vacatur or reversal. If Judges Wilson and Branch had intended to affirm final approval, they would have first had to determine that the District Court

correctly declined to apply a heightened standard of scrutiny to the Agreement, even though it was ultimately determined to be a coupon settlement, thus creating a new circuit split. *Drazen IV*, 106 F.4th at 1342 n.69; *see also In re HP Inkjet Printer Litig.*, 716 F.3d at 1178. They would also have had to conclude that, in this instance, the District Court's failure to consider actual or estimated redemption rates of coupons was not an abuse of discretion, even though it often would be. *Drazen IV*, 106 F.4th at 1350. In fact, Judges Wilson and Branch would also have had to consider and reject the alternative bases for vacating final approval in the remainder of Judge Tjoflat's opinion.

This is true because it only takes one error to justify a vacatur and remand, but the Court must reject all claims of error to justify affirmance. Nothing in *Drazen IV*'s opinion can be read as considering and rejecting these numerous issues that bore on whether the District Court abused its discretion in granting final approval. Therefore, *Drazen IV*'s opinion is not consistent with the Court affirming final approval.

**D.** **_Marks_ Is Irrelevant to Interpreting the Judgment in _Drazen IV_.**

Contrary to Plaintiff's arguments, *Marks v. United States*, 430 U.S. 188 (1977), does not bear on the scope of *Drazen IV*'s judgment. As the Supreme Court held in *Marks*, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may

be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds…." *Id.* at 193 (citation omitted). This rule is a guide to interpreting an appellate court's *holding*, not the court's *judgment*, which is invariably announced explicitly, as at the end of Judge Tjoflat's opinion. In any event, there was no fractured decision as to the appropriate judgment here (*i.e.*, one vote for affirmance, one vote for vacatur, one vote for reversal).[8] Judges Wilson and Branch expressly concurred in the judgment Judge Tjoflat announced; the result was unanimous. *See* Section I(B), *supra*. Therefore, *Marks* has no application.

* * *

For all of these reasons, this Court should conclude that *Drazen IV*'s judgment was to vacate final approval and the award of attorneys' fees (*i.e.*, a general vacatur).

## II. The *Drazen IV* Panel's Basis for Vacating Final Approval Was, in Part, for Reasons Other than the Fee Award.

The scope of *Drazen IV*'s judgment alone is not necessarily enough to dispose of this appeal. Under the Agreement, both parties could terminate the Agreement if "an appellate Court vacates or reverses the Final Approval Order on any basis other than the approval of the attorney's fees, costs, and expenses payable to Class

---

[8] For similar reasons, *Marks* does not impact the analysis of *Drazen IV*'s opinion. *Marks* applies only when "no single rationale explaining the result enjoys the assent" of a majority. *Marks*, 430 U.S. at 193. Here, Section III(C)(iii) of Judge Tjoflat's opinion enjoyed unanimous support, and that section, standing alone, contained reasons unrelated to the fee award that supported a vacatur of final approval. *See Drazen IV*, 106 F.4th at 1342 n.69, 1350.

Counsel…." App.55 (¶ 84(c)). Therefore, this Court must also address the scope of *Drazen IV*'s reasons for vacating final approval. If this Court vacated final approval, in part, based on any reason other than the fee award, then GoDaddy properly exercised its termination right.

If any fact pattern exists in which an appellate court would vacate final approval *solely* based on issues with a fee award that do not potentially affect the settlement as a whole, it is a rare one. Multiple sister circuits have noted that, upon vacating a fee award, they are *obligated* to continue on to the issue of final approval. *See In re Lumber Liquidators*, 952 F.3d at 492 ("Given our decision to vacate the Attorney's Fee Order, we are obliged to assess whether the Settlement Approval Order survives that decision."); *McKinney-Drobnis*, 16 F.4th at 605-06 ("[D]etermining that the vouchers are coupons under CAFA and vacating the fee award does not necessarily require invalidating the entire settlement approval order … [b]ut when an objector brings a challenge to the settlement agreement under Rule 23(e), we *must* analyze the entire agreement for fairness…." (emphasis added)).

This does not mean the "fee award" carve-out in the termination provisions was superfluous. This carve-out addressed a broader issue: ensuring that the parties did not gain a termination right purely because the fee award (and nothing else) was vacated and remanded. That is well within the range of possible outcomes in an appeal of a class action settlement. *See, e.g., In re Lumber Liquidators*, 952 F.3d at

492 (affirming settlement approval while vacating order on attorney's fees); *CPK*, 129 F.4th at 680 (same); *In re Easysaver Rewards Litig.*, 906 F.3d at 763 (same). In the Agreement, "Final Approval Order" is defined to mean "the order and final judgment that the [District] Court enters granting final approval of the Agreement and determining the amount of fees, costs, and expenses awarded to Class Counsel and the amount of a service award, if any, to Plaintiffs. If the Court issues separate orders addressing these matters, Final Approval Order shall be defined to include all such orders." App.34 (¶ 32). Absent the carve-out, then, GoDaddy could have gained a termination right even if final approval was affirmed, so long as the fee award was vacated. The termination provision prevents that result.

This case falls squarely outside any "fees-only" scenario. Here, the *Drazen IV* panel identified legal issues bearing on final approval, rather than only on attorneys' fees. The *Drazen IV* panel's determination that the Agreement was a coupon settlement under CAFA meant that the District Court needed to address the appropriate standard of review under CAFA and also "consider the redemption rate of the coupons during the fair, reasonable, and adequate assessment of the settlement as a whole" (*i.e.*, during final approval). *Drazen IV*, 106 F.4th at 1342 n.69, 1350; *see also* Section I(C), *supra*. The identification of multiple open issues that call into question the validity of the District Court's original grant of final approval is a "basis other than the approval of the attorney's fees, costs, and expenses payable to Class

Counsel" for vacating final approval. App.55 (¶ 84(c)). Therefore, this Court should affirm the District Court's order holding that GoDaddy properly exercised its termination right.

**III. In the Alternative, if the *Drazen IV* Panel Erroneously Failed to Render an Appellate Judgment as to Final Approval, this Court Should Recall the Mandate to Prevent Injustice.**

At times, Plaintiff's opening brief seems to suggest that the *Drazen IV* panel rendered *no* appellate judgment with regards to final approval—neither affirming, nor vacating, nor reversing. In the District Court, Plaintiff argued that final approval was affirmed. App.134 ("Thus, the Eleventh Circuit (by a 2-1 vote) affirmed the approval of the Settlement."). GoDaddy assumes that Plaintiff meant to continue pressing this argument on appeal, but certain statements in her opening brief are difficult to square with that position. For instance, Plaintiff claims that "silence [as to final approval] means … that the issue was unnecessary to resolve. That is the case here." *See* Plaintiff Br. at 22. An affirmance of final approval would mean that the *Drazen IV* panel *considered and rejected* Pinto's appellate issues related to final approval, not that they were unnecessary to resolve. Similarly, Plaintiff claims that a "question reserved is not a question decided" as to the issue of whether "CAFA requires district courts to give heightened scrutiny to coupon settlements." *See id.* at 14. But, affirmance would mean the question *was* decided and could not be revisited later in the case. Given this confusion, it is necessary to address what should follow

40

if this Court decides that the *Drazen IV* panel inadvertently failed to render any appellate judgment as to final approval.

If that occurred, it would be an error of constitutional proportions. As explained *supra*, federal "'courts are obliged to decide cases within the scope of federal jurisdiction' assigned to them." *BP p.l.c.*, 593 U.S. at 237 (quoting *Sprint Commc'ns, Inc.*, 571 U.S. at 72). A failure to render a complete appellate judgment would violate the duty that Article III imposes upon this Court to decide those Cases and Controversies that properly come before it.

If the *Drazen IV* panel failed to render a complete appellate judgment through inadvertent mistake, the only viable course of action would be to recall the mandate and decide whatever issues the panel deems necessary to render a judgment on final approval.

Any other course of action would throw this case into chaos. Under the Agreement, the "Effective Date" that indirectly triggers GoDaddy's obligation to fund the settlement is "the fifth business day after the last of" several enumerated events, one of which is that "[t]he time for seeking rehearing or appellate or other review has expired, and no appeal or petition for rehearing or review has been timely filed; or *the Agreement is affirmed on appeal or review* without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or *certiorari* could be taken has

finally expired and relief from a failure to file same is not available." App.33-34 (¶ 30 & (b)) (emphasis added); *see also* App.50-51 (¶ 75). The first clause does not apply because Pinto timely appealed from the District Court's judgment. If no appellate judgment on final approval was rendered, the second clause also would not apply because the Agreement was not "affirmed on appeal or review." App.34 (¶ 30(b)). Therefore, the Effective Date would never occur.

In such a hypothetical world, GoDaddy would never have any obligation to fund the settlement. App.50-51 (¶ 75). Though the Agreement would spring back into force, it would be toothless, incapable of delivering relief to the class. This case would hang in limbo, indefinitely, until one party elected to terminate the Agreement anew because "[t]he Effective Date d[id] not occur." App.55 (¶ 84(d).)

This is an absurd outcome, to be sure, but the Agreement can be read no other way without completely rewriting the definition of "Effective Date." Clearly, the parties assumed that this Court would render a complete appellate judgment in the event of an appeal, such that the total range of possible outcomes was to affirm final approval (in which case, the "Effective Date" would eventually be triggered) or to vacate or reverse final approval (in which case, each party would gain a termination right). App.33-34, App.54-55 (¶¶ 30 & (b), 84 & (c)).

Of course, the Court *did* render a complete appellate judgment. That is what this Court does; it decides the appeals that properly come before it. Judge Tjoflat

announced the Court's judgment ("vacat[ing] the judgment of the District Court *and* its order granting attorney's fees"), *Drazen IV*, 106 F.4th at 1352 (Tjoflat, J.) (emphasis added and removed), and Judges Wilson and Branch concurred in that judgment, noting that it was "correct[]." *Drazen IV*, 106 F.4th at 1352-53 (Wilson, J., concurring in the judgment). To avoid this, Plaintiff is forced to adopt the absurd premise that all issues bearing on final approval were "unnecessary to resolve" an appeal from a judgment of final approval. *Compare* Plaintiff Br. at 22, *with* App.266-267. That cannot be right, and this Court should affirm.

## CONCLUSION

This Court should affirm the District Court's order holding that GoDaddy properly terminated the Agreement because *Drazen IV* vacated the Final Approval Order, at least in part, "on any basis other than the approval of the attorney's fees, costs, and expenses payable to Class Counsel or a service award to Plaintiffs." App.55 (¶ 84(c)).

Dated: April 20, 2026      Respectfully Submitted,

**COZEN O'CONNOR**

*/s/ Jeffrey M. Monhait*
Jeffrey M. Monhait
3 WTC, 175 Greenwich Street
55th Floor
New York, NY 10007
Tel: 215-665-2084
Email: jmonhait@cozen.com

Robert S. Clark
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel: 215-665-2041
Email: robertclark@cozen.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT AND TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

Pursuant to Fed. R. App. P. 32(g)(1), I certify the following:

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 10,707 words, excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure and/or 11th Cir. R. 32-4.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using Version 2602 Build 16.0.19725.20126 of Microsoft Word for Microsoft 365 in 14 point Times New Roman font.

Dated: April 20, 2026

By: */s/ Jeffrey M. Monhait*
Jeffrey M. Monhait

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 20, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: April 20, 2026

By: *<u>/s/ Jeffrey M. Monhait</u>*
Jeffrey M. Monhait